FILED

May 11 2017, 6:24 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Gregory L. Fumarolo | Curtis T. Hill, Jr. |
| Fort Wayne, Indiana | Attorney General of Indiana |
| | Ian McLean |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Larry C. Perry, Jr., | May 11, 2017 |
| *Appellant-Defendant,* | Court of Appeals Case No. 02A04-1608-CR-1890 |
| v. | Appeal from the Allen Superior Court |
| State of Indiana, | The Honorable Samuel Keirns, Magistrate |
| *Appellee-Plaintiff* | Trial Court Cause No. 02D06-1512-F5-347 |

**Crone, Judge.**

## Case Summary

[1] This case highlights the difficulties and frustrations encountered by members of the law enforcement community who investigate and prosecute domestic

violence cases in which the victim recants her accusations against the abuser, an unfortunate and all-too-common occurrence.[1] This case also highlights the limits of circumstantial evidence in proving a criminal defendant's guilt beyond a reasonable doubt.

[2] Larry C. Perry, Jr.'s wife told police officers that Perry had beaten and strangled her over the course of several days and showed them bruises and other injuries to support her accusations, some of which were admitted as substantive evidence at trial and some of which were admitted solely to impeach her credibility. Perry was charged in Allen County with committing multiple crimes and with being a habitual offender. At trial, Perry's wife denied that Perry had assaulted her and denied telling that to the police, and she attributed her injuries to other causes. Nonetheless, the jury found Perry guilty of two counts of battery, one count of strangulation, and two counts of domestic battery, and also found him to be a habitual offender. The trial court merged several convictions based on double jeopardy concerns and sentenced him to six years on one count of level 5 felony battery, with a six-year habitual offender enhancement, and to two and a half years on one count of level 6 felony domestic battery, for an aggregate sentence of fourteen and a half years executed.

---

[1] *See* Tom Lininger, *Prosecuting Batterers After Crawford*, 91 VA. LAW REVIEW 747, 768 (May 2005) ("Victims of domestic violence are more prone than other crime victims to recant or refuse to cooperate after initially providing information to police. Recent evidence suggests that 80 to 85 percent of battered women will recant at some point.").

[3] On appeal, Perry raises four issues: (1) whether the State presented sufficient evidence to support his convictions; (2) whether the State presented sufficient evidence to prove venue on four charges, i.e., that the crimes were committed in Allen County; (3) whether the trial court abused its discretion in denying his motion for mistrial; and (4) whether his sentence is inappropriate in light of the nature of the offenses and his character. Based on our review of the record, we conclude as follows: (1) the State failed to present sufficient evidence for a jury to find that Perry committed any crime other than one count of level 6 felony domestic battery, which means that the habitual offender finding cannot stand; (2) the State also failed to present sufficient evidence to prove venue on four charges; (3) Perry has failed to establish that the trial court abused its discretion in denying his motion for mistrial; and (4) Perry has failed to persuade us that his sentence for level 6 felony domestic battery is inappropriate in light of the nature of the offense and his character. Therefore, we affirm his conviction and sentence on that count and reverse his remaining convictions and habitual offender finding.

## Facts and Procedural History[2]

[4] The facts most favorable to Perry's convictions are that he and his wife Lydia checked into the Coliseum Inn in Allen County on or about November 30, 2015. On December 4, Perry and Lydia went to the triage desk at Parkview

---

[2] We held oral argument on April 18, 2017, at Manchester University. We thank the faculty, staff, and students for their hospitality, and we thank counsel for their excellent advocacy.

Regional Medical Center.[3] Lydia told the nurse that she had been in a "motor vehicle collision" two days earlier but had not sought medical attention. Tr. Vol. 1 at 144. She had multiple bruises on both sides of her face and complained of pain in that area, but she reported no other bruising or pain. Lydia "complained of significant dizziness" to the emergency room doctor and told him that "she had been knocked unconscious for about a minute or somewhere around there." *Id*. at 149. A CT scan detected "significant swelling" on the left side of Lydia's face, "but intercranially, or inside the brain, looked okay." *Id*. The doctor diagnosed her "with a concussion and facial injuries" resulting from a motor vehicle accident. *Id*.[4] According to the doctor, Lydia's bruises "seemed consistent" with a two-day-old injury. *Id*. at 151.

[5] Shortly after noon on December 6, someone called 911 to report that a man was "being belligerent" and throwing a crying woman against a wall in a room at the Coliseum Inn. State's Ex. 1 (recording of 911 call). Fort Wayne Police Department Officers Michael DeLong and Joshua Roscoe responded to the call. They "heard a male yelling from inside the room" and "a female whimpering or crying possibly." Tr. Vol. 1 at 159-60. Officer DeLong knocked

---

[3] The only evidence regarding the location of the medical center was elicited via the following question from the prosecutor to Fort Wayne Police Department Detective Jeff Marsee: "Detective, you did subsequently, by way of medical release though, secure copies of medical records from Parkview Hospital that confirmed a visit to a local hospital by [Lydia] on December 4, did you not?" Tr. Vol. 1 at 196. The detective replied, "Yes." *Id*.

[4] The doctor did not say whether his diagnosis of the cause of Lydia's injuries was based on her self-report and/or the injuries themselves.

on the door, and Perry opened it. According to the officer, Perry appeared "[a]ngry," and Lydia was crying and appeared "[f]earful and frantic." *Id*. at 162. Lydia, who was standing behind Perry, waved Officer DeLong into the room, and the officer asked Perry to step outside. The officer saw that Lydia had a "bloody lip," and she told him that Perry had done that "[j]ust now" by "hitting her in the face." *Id*. at 164.[5] The officer noticed bruising around Lydia's neck and the "top of her chest," and she told him "that there was an incident prior to that where she had some bruising to her thigh," which she showed him. *Id*. at 165. Perry told Officer Roscoe that Lydia "had been in a car accident a few days prior and that's how she had all of her injuries." *Id*. at 177. Perry denied touching Lydia.

[6] The officers arrested Perry and brought him and Lydia to the police station, where they were interviewed by Detective Jeff Marsee. Lydia told the detective that Perry "had hit her in the mouth when officers were knocking on the door." *Id*. at 183. She also said that she was dizzy and that "the bruising on her face and neck was from an incident that started on December 2, and went into the

---

[5] At trial, Perry did not object to the officer's testimony about Lydia's statement on hearsay grounds, presumably because it could be considered an excited utterance. *See* Ind. Evidence Rule 801(c) (defining hearsay as "a statement that: (1) is not made by the declarant while testifying at the trial or hearing; and (2) is offered in evidence to prove the truth of the matter asserted."); Ind. Evidence Rule 802 ("Hearsay is not admissible unless these rules or other law provides otherwise."); Ind. Evidence Rule 803(2) (providing that an excited utterance, i.e., "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused[,]" is "not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness").

early mornings hours of December 3rd." *Id*. at 184.[6]  Police took photographs of Lydia's bloody lip, bruises on her face, throat, chest, and arms, and a bruise encircling a red mark on her thigh.

[7]  Perry told Detective Marsee that "he may have accidentally hit [Lydia] in the mouth when he was trying to push her away" earlier that day.  *Id*. at 185.  Perry also told the detective that "the bruising and stuff on her face and neck was from a car wreck a couple days before," but Perry "did not believe that she was in a car wreck because she did not have a car[.]"  *Id*.  Perry claimed that he was with his father, not Lydia, on December 2 and 3.

[8]  On December 10, Perry was charged in Allen Superior Court with five counts: Count 1, level 5 felony battery (for a battery resulting in serious bodily injury committed between December 2 and 3);[7] Count 2, level 6 felony battery (for a battery resulting in moderate bodily injury committed between December 2 and 3);[8] Count 3, level 6 felony strangulation (committed between December 2 and 3);[9] Count 4, level 6 felony domestic battery (for a battery of a spouse resulting

---

[6] At trial, the detective did not elaborate on the details of this "incident."  The trial court admitted this testimony as a statement of Lydia's then-existing physical condition under Indiana Evidence Rule 803(3).

[7] Battery is the knowing or intentional touching of another person in a rude, insolent, or angry manner.  Ind. Code § 35-42-2-1.  Indiana Code Section 35-31.5-2-292 defines serious bodily injury in pertinent part as bodily injury that causes unconsciousness or extreme pain.  "'Bodily injury' means any impairment of physical condition, including physical pain."  Ind. Code § 35-31.5-2-29.

[8] "'Moderate bodily injury' means any impairment of physical condition that includes substantial pain."  Ind. Code § 35-31.5-2-204.5.

[9] Indiana Code Section 35-42-2-9 defines strangulation in pertinent part as the knowing or intentional application of pressure to the throat or neck of another person in a rude, angry, or insolent manner that impedes the other person's normal breathing or blood circulation.

in bodily injury committed between December 2 and 3, with a prior domestic battery conviction);[10] and Count 5, level 6 felony domestic battery (for a battery of a spouse resulting in bodily injury committed on December 6, with a prior domestic battery conviction). The State later alleged in Count 6 that Perry was a habitual offender based on four prior unrelated felony convictions. The trial court issued a protective order prohibiting Perry from contacting Lydia, which he violated by calling her 176 times before his two-day jury trial in June 2016.

[9]     On the first day of trial, Lydia testified that as of December 6, she and Perry had been staying at the Coliseum Inn "[f]or about a week." *Id*. at 103. She claimed that she had injured her lip by tripping and hitting her mouth on a table while she and Perry were fighting over his phone, which she thought he was using to contact another woman. She claimed that her other injuries had been caused during a fight with two women in an Ohio park on the night of December 2 and that she had lied about being in a car accident because she did not want police to investigate the fight. According to Lydia, she drove her uncle's car to Ohio to visit her family on December 2, returned on December 3, and celebrated Perry's birthday that day by going to a restaurant with him. She claimed that she told Perry that she "got into a fight with a girl," and "[h]e said [she] shouldn't have gone." *Id*. at 107.

---

[10] A domestic battery is the battery of a family or household member, which may include a current or former spouse. Ind. Code §§ 35-42-2-1.3, 35-31.5-2-128.

[10]     Lydia denied telling Officer DeLong and Detective Marsee that Perry hit her. In response to this testimony, the trial court allowed Officer DeLong to testify that Lydia told him that Perry had "[p]unched her" and "attempted to choke her" and stabbed her in the leg with a fork "a few days" before December 6 (as generally alleged in Counts 1 through 4) and that Perry had told her to tell the medical center staff that "she was involved in a car accident[.]" *Id*. at 171, 172. But the court instructed the jury that the testimony could be considered only for impeachment purposes and not "as direct evidence of the offenses[.]" *Id*. at 170. The court did not admit the testimony as substantive evidence on the basis that Lydia's statements did not qualify as excited utterances under Indiana Evidence Rule 803(2). *See* n.5, *supra*.

[11]     Lydia also said that she did not "want the charges against" Perry and claimed that she had not talked to him on the phone since December. *Id*. at 108, 137. She acknowledged writing a letter to Perry's counsel and the prosecutor stating that she had "lied on [Perry] out of madness over personal matters," i.e., suspicions that he was cheating on her. Defendant's Ex. A. She also wrote a letter to Perry in which she apologized for "lying" and stated that she "really didn't know how serious it was going to get." Defendant's Ex. B.

[12]     To rebut this statement, the State called Detective Taya Strausborger, who testified that both Perry and Lydia were arrested after an incident on March 9, 2015. Initially, the detective considered Lydia to be the suspect and Perry to be the victim, but that assessment changed. Lydia told the detective that Perry "had put his hands around her throat[,]" which was "painful" and caused her to

have a "raspy" voice, and that she "pushed him away." Tr. Vol. 1 at 202, 203. Ultimately, no charges were filed against either Perry or Lydia as a result of that incident.

[13] On the evening of the first day of trial, Perry again violated the no-contact order by calling Lydia from jail. *See* State's Ex. 15 (recording of call). The call was recorded, and the recording was played for the jury the next day. During the call, Perry mentioned the March 9 incident and suggested that Lydia not dispute his initial "victim" status if she were recalled to the stand. *Id*. Lydia told Perry that she was "traumatized" because the prosecutor "kept coming at [her] with those pictures of [her] face and sh*t and that sh*t was really bothering [her.]" *Id*. Perry assured Lydia that his attorney was not going to do the same thing that the prosecutor did, claimed that his attorney wanted her to "keep doing what [she was] doing," and told her that he would be "out tomorrow" if he won. *Id*.

[14] The State rested its case, and Perry moved for a directed verdict on Counts 1 through 4 based on the State's alleged failure to prove venue. The trial court denied the motion. Perry did not testify, and the defense rested without calling any witnesses.

[15] The jury found Perry guilty on all counts. At the July 29 sentencing hearing, the trial court merged Counts 2 through 4 with Count 1 based on double jeopardy concerns. The court imposed a six-year sentence on Count 1, with a six-year habitual offender enhancement, and imposed a consecutive two-and-a-

half-year sentence on Count 5, for an aggregate sentence of fourteen and a half years executed. Under a different cause number, Perry had been charged with and pled guilty to four counts of level 6 felony invasion of privacy based on his multiple violations of the no-contact order, and he received an additional four-year executed sentence at the same hearing. The trial court issued a no-contact order as part of Perry's sentence in both cases, which Perry refused to acknowledge with his signature. He also stated that he was not "worried" about violating the orders or losing "good time credit" or being held in contempt of court as a result. Sent. Tr. at 23.

[16] Perry now appeals his convictions and sentence in the instant case. Additional facts will be provided as necessary.

## Discussion and Decision

## Section 1 – The State presented sufficient evidence for a jury to find that Perry committed the domestic battery alleged in Count 5, but it failed to present sufficient evidence regarding the other charged offenses.

[17] Perry argues that the State failed to present sufficient evidence to support his convictions. "The Due Process Clause of the Fourteenth Amendment protects a defendant against conviction except upon proof beyond a reasonable doubt of every element necessary to constitute the crime with which he is charged." *Cockrell v. State*, 743 N.E.2d 799, 806 (Ind. Ct. App. 2001). "While we seldom reverse for insufficient evidence, in every case where that issue is raised on appeal we have an affirmative duty to make certain that the proof at trial was,

in fact, sufficient to support the judgment beyond a reasonable doubt." *Bean v. State*, 818 N.E.2d 148, 150 (Ind. Ct. App. 2004).

[18] "We do not reweigh the evidence or assess the credibility of witnesses in reviewing a sufficiency of the evidence claim." *Bell v. State*, 31 N.E.3d 495, 499 (Ind. 2015). "The factfinder is obliged to determine not only whom to believe, but also what portions of conflicting testimony to believe, and is not required to believe a witness'[s] testimony even when it is uncontradicted." *Wood v. State*, 999 N.E.2d 1054, 1064 (Ind. Ct. App. 2013) (citation omitted), *trans. denied* (2014), *cert. denied*. On appeal, we consider conflicting evidence most favorably to the jury's verdict. *Schaaf v. State*, 54 N.E.3d 1041, 1043 (Ind. Ct. App. 2016). We look to the evidence that supports the verdict and the reasonable inferences drawn therefrom and will affirm the convictions if there is probative evidence from a which a reasonable factfinder could have found the defendant guilty beyond a reasonable doubt. *Bell*, 31 N.E.3d at 499.

[19] "The State need not present direct evidence to support each element of a crime, and it has long been held that circumstantial evidence will support a conviction." *Semenick v. State*, 977 N.E.2d 7, 15 (Ind. Ct. App. 2012) (emphasis removed), *trans. denied* (2013). Direct evidence has been defined as "[e]vidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption." BLACK'S LAW DICTIONARY (10th ed. 2014). Circumstantial evidence has been defined as "[e]vidence based on inference and not on personal knowledge or observation" or as "[a]ll evidence that is not given by eyewitness testimony." *Id*. "A conviction may rest on

circumstantial evidence alone. Circumstantial evidence need not overcome every reasonable hypothesis of innocence. It is sufficient if an inference drawn from the circumstantial evidence reasonably tends to support the conviction." *Peters v. State*, 959 N.E.2d 347, 355 (Ind. Ct. App. 2011) (citations omitted).

[20] All that being said, our supreme court has emphasized that

> [a]ny consideration and determination of the jury is to be made on the evidence presented to them. Imagination or speculation is not a proper basis for presenting evidence nor for analyzing it or reaching conclusions based on it. In fact, the purpose of our rules of evidence and the procedures we follow in conducting a trial is to remove imagination and speculation from the process and to determine the best we humanly can that an individual is guilty or not guilty based on sound probative evidence.

*Hoskins v. State*, 441 N.E.2d 419, 426 (Ind. 1982); *see also Weisheit v. State*, 26 N.E.3d 3, 11 (Ind. 2015) ("[A] conviction cannot be sustained when 'an essential element of an offense necessary in the proof of the offense and to sustain a verdict of guilty … is founded solely and wholly upon another inference.' This is because 'the probability of a given inference being accurate decreases with each inferential building block.'") (quoting *Landress v. State*, 600 N.E.2d 938, 942 (Ind. 1992)), *cert. denied* (2016); *Mediate v. State*, 498 N.E.2d 391, 393 (Ind. 1986) ("A reasonable inference of guilt must be more than a mere suspicion, conjecture, conclusion, guess, opportunity, or scintilla.").

[21] We first address Perry's argument that the State failed to prove beyond a reasonable doubt that he committed level 6 felony domestic battery against

Lydia on December 6 as alleged in Count 5.[11] The State presented evidence that on December 6, Officers DeLong and Roscoe responded to a report of a "belligerent" man throwing a crying woman against a hotel room wall. State's Ex. 1. When they arrived, the officers found an "[a]ngry" Perry and his crying, "[f]earful[,] and frantic" wife Lydia, who waved Officer DeLong into the room. Tr. Vol. 1 at 162. The officer saw that Lydia had a "bloody lip" – a fresh injury – as well as numerous bruises on her face and body. *Id.* at 164. At trial, the court admitted as substantive evidence Lydia's statement to the officer that Perry had bloodied her lip "[j]ust now" by "hitting her in the face." *Id.* at 164.[12] The court also admitted as substantive evidence Lydia's statement to Detective Marsee that Perry "had hit her in the mouth when officers were knocking on the door." *Id.* at 183.

[22] Based on both direct evidence (Lydia's eyewitness statements to the officer and the detective) and circumstantial evidence (the 911 call, the officer's testimony, Lydia's bloody lip), a reasonable factfinder could find beyond a reasonable doubt that Perry knowingly or intentionally touched his wife in a rude, insolent, or angry manner by hitting her in the face, which resulted in physical pain. Perry's only challenges to the sufficiency of the evidence regarding Count 5 are

---

[11] Perry does not dispute that he had a prior domestic battery conviction, which elevated the offense from a class A misdemeanor to a level 6 felony.

[12] Substantive evidence has been defined as "[e]vidence offered to help establish a fact in issue, as opposed to evidence directed to impeach or to support a witness's credibility." BLACK'S LAW DICTIONARY (10th ed. 2014).

that Lydia later denied telling the police that he battered her and/or recanted her accusations, and she also claimed that she injured her lip by accidentally tripping and hitting her mouth on a table. This argument is merely an invitation to reweigh conflicting evidence and assess witness credibility, which we may not do.

[23] But Lydia's denials and recantations are much more problematic with respect to the batteries and strangulation charged in Counts 1 through 4, which were alleged to have occurred on December 2 or 3. Her statements to police that Perry had committed those crimes were not admitted as substantive evidence. The jurors saw the photographs of Lydia's injuries and heard conflicting stories about how and by whom they were caused. The jurors were entitled to disbelieve those stories, but they were not entitled to infer that Perry caused Lydia's injuries based solely on the couple's lack of credibility. This would amount to speculation, which is insufficient to sustain a conviction.[13] *Mediate*, 498 N.E.2d at 393; *see also Willis v. State*, 27 N.E.3d 1065, 1068 (Ind. 2015) ("An inference cannot be based upon evidence which is uncertain or speculative or

---

[13] At oral argument, the State conceded that the jurors were not entitled to speculate that Perry battered and strangled Lydia on December 2 or 3 simply because he battered her on December 6. The State suggested that Lydia's December 6 statement that Perry had hit her in the face "just now" could be interpreted as an indication that he had caused her other injuries on December 2 or 3, but this suggestion is itself mere speculation. Our supreme court has stated that "[a]ny testimony tending to show an accused's attempt to conceal implicating evidence or to manufacture exculpatory evidence may be considered by the trier of fact as relevant since revealing a consciousness of guilt." *Grimes v. State*, 450 N.E.2d 512, 521 (Ind. 1983). The jurors were entitled to believe that Perry attempted to conceal implicating evidence by lying about the cause of Lydia's injuries and that he also attempted to manufacture exculpatory evidence by taking her to the hospital to be treated for injuries from an alleged motor vehicle accident, but lack of credibility is insufficient to prove beyond a reasonable doubt that he actually battered and strangled her.

which raises merely a conjecture or possibility.") (citation omitted). Consequently, we must reverse Perry's convictions on Counts 1 through 4. We must also reverse his habitual offender finding because his conviction on Count 5 was enhanced to a felony based on a prior unrelated conviction. *See* Ind. Code §§ 35-42-2-1.3 (domestic battery statute), 35-50-2-8(e) ("The state may not seek to have a person sentenced as a habitual offender for a felony offense under this section if the current offense is a misdemeanor that is enhanced to a felony in the same proceeding as the habitual offender proceeding solely because the person had a prior unrelated conviction.").

## Section 2 – The State also failed to present sufficient evidence of venue on Counts 1 through 4.

[24] Notwithstanding our reversal of Perry's convictions on Counts 1 through 4, we also address his argument that the State failed to present sufficient evidence of venue on those counts. Article 1, Section 13 of the Indiana Constitution states, "In all criminal prosecutions, the accused shall have the right to a public trial … in the county in which the offense shall have been committed …." "Venue is not an element of the offense." *Smith v. State*, 835 N.E.2d 1072, 1074 (Ind. Ct. App. 2005). Accordingly, the State is required to prove venue only by a preponderance of the evidence rather than beyond a reasonable doubt. *Id*. In other words, the State was required to prove that Perry more likely than not committed the crimes in Allen County. *See Fry v. State*, 990 N.E.2d 429, 448 (Ind. 2013) (explaining preponderance standard). We treat a claim of insufficient evidence of venue in the same manner as other insufficient evidence

claims. *Smith*, 835 N.E.2d at 1074. "We neither reweigh the evidence nor assess witness credibility and look only to the evidence and the reasonable inferences drawn therefrom which support the conclusion of requisite venue." *Id*. Venue may be established by circumstantial evidence. *Bryant v. State*, 41 N.E.3d 1031, 1037 (Ind. Ct. App. 2015). "[T]he State meets its burden of establishing venue if the facts and circumstances permit the trier of fact to infer that the crime occurred in the given county." *Eckstein v. State*, 839 N.E.2d 232, 233 (Ind. Ct. App. 2005).

[25] The State presented virtually no probative evidence that Perry committed the offenses alleged in Counts 1 through 4, and it presented even less evidence regarding where those alleged offenses occurred.[14] Thus, even under the less stringent preponderance standard, we would be compelled to reverse Perry's convictions based on insufficient evidence of venue in any event.

## Section 3 – Perry has failed to establish that the trial court abused its discretion in denying his motion for mistrial.

[26] During the State's case-in-chief, Detective Marsee testified that Perry claimed to have been with his father on December 2 and 3, when some of Lydia's injuries were inflicted. *See* Tr. Vol. 1 at 185 ("[Perry] just said that he was not with

---

[14] The State posits that the offenses were committed in Allen County because Lydia sought treatment for her injuries at Parkview Regional Medical Center. As stated in footnote 3, *supra*, the only evidence elicited regarding the hospital's location was that it is "local," Tr. Vol. 1 at 196, and no evidence at all was elicited regarding where Lydia's injuries occurred. Any inference that the offenses were committed in Allen County because Lydia sought treatment at a hospital in that county would be purely speculative.

Lydia that day, he was with his father."). The following exchange occurred between the prosecutor and the detective:

Q [Perry] was with his father. Did you go through any steps to verify his story?

A Yes.

Q What did you do?

A I called his father.

Q Who did you speak with?

A Larry, Sr.

Q And what did you tell Mr. Larry Sr. as far as the reason for you calling him?

A That I was investigating an incident with his son.

Q What else did you tell him?

A I asked him if his son was with him on December 2nd and 3rd and [he] said no.

*Id*. at 185-86. Defense counsel objected on hearsay grounds and asked "that the witness be admonished and the jury instructed." *Id*. at 186. He noted that Perry's father had not been subpoenaed and that Perry had not asserted an alibi defense. Counsel then moved for a mistrial, stating, "I don't know that you can un-ring the bell[.]" *Id*. at 188. The trial court sustained the hearsay objection, denied the motion for mistrial, and instructed the jury as follows: "Ladies and

gentlemen of the jury, the last question asked by the Prosecutor, and the answer given just before [defense counsel] objected, are not to be considered by you as evidence. You're to treat them as if you never heard them." *Id*. at 189.

[27] Perry now contends that the trial court erred in denying his motion for mistrial. "A mistrial is an extreme remedy warranted only when no other curative measure will rectify the situation." *Pugh v. State*, 52 N.E.3d 955, 971 (Ind. Ct. App. 2016), *trans. denied*. "To prevail on appeal from the denial of a motion for mistrial, the defendant must establish that he was placed in a position of grave peril to which he should not have been subjected." *Id*. "The gravity of the peril is determined by considering the misconduct's probable persuasive effect on the jury's decision." *Id*. "A trial court is in the best position to determine whether a mistrial is warranted because it evaluates first-hand all relevant facts and circumstances at issue and their impact on the jury." *Id*. "We accordingly review the trial court's denial of a motion for a mistrial for an abuse of discretion. However, the correct legal standard for a mistrial is a pure question of law, which we review de novo." *Weisheit*, 26 N.E.3d at 15 (citation omitted). "Generally, a timely and accurate admonition is an adequate curative measure for any prejudice that results." *Orta v. State*, 940 N.E.2d 370, 374 (Ind. Ct. App. 2011), *trans. denied*. "When the jury is properly instructed, we will presume they followed such instructions." *Duncanson v. State*, 509 N.E.2d 182, 186 (Ind. 1987). "We seldom find reversible error when the trial court admonishes the jury to disregard the statement made during the proceedings." *Davidson v. State*, 580 N.E.2d 238, 241 (Ind. 1991).

[28]     Perry complains that the State "set up a strawman alibi defense which [he] did not file, pursue, or argue" and that "Detective Marsee blurted out a hearsay statement attributed to [Perry's] father, even though there was no question before him on that issue." Appellant's Br. at 20. He asserts that "[t]his evidentiary harpoon 'disproved' the strawman alibi defense which was never raised by Perry" and that "[t]his 'information' was extremely prejudicial and inflammatory." *Id*. But Perry makes no specific argument that Detective Marsee's inadmissible statement probably had a persuasive effect on the jury's decision or that the trial court's admonition was inaccurate or an inadequate curative measure. Accordingly, we conclude that Perry has failed to establish that the trial court abused its discretion in denying his motion for mistrial.[15]

## Section 4 – Perry has failed to persuade us that his sentence for level 6 felony domestic battery is inappropriate in light of the nature of the offense and his character.

[29]     Finally, Perry asks us to reduce the sentence on his only remaining conviction pursuant to Indiana Appellate Rule 7(B), which provides that this Court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Our supreme court

---

[15] In his brief, Perry specifically requests a retrial on Counts 1 through 4, which relate to the offenses allegedly committed on December 2 and 3. We have reversed Perry's convictions for those offenses. At oral argument, Perry asserted that he is also entitled to a retrial on Count 5 because Detective Marsee's testimony impugned his credibility. Because Perry has failed to rebut the presumption that the trial court's admonition cured any resulting prejudice, we reject that assertion.

has explained that the principal role of appellate review should be to attempt to leaven the outliers, "not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). We independently examine the nature of Perry's offense and his character under Appellate Rule 7(B) with substantial deference to the trial court's sentence. *Satterfield v. State*, 33 N.E.3d 344, 355 (Ind. 2015). "In conducting our review, we do not look to see whether the defendant's sentence is appropriate or if another sentence might be *more* appropriate; rather, the test is whether the sentence is 'inappropriate.'" *Barker v. State*, 994 N.E.2d 306, 315 (Ind. Ct. App. 2013), *trans. denied* (2014). "In assessing whether a sentence is inappropriate, appellate courts may take into account whether a portion of the sentence is ordered suspended or is otherwise crafted using any of the variety of sentencing tools available to the trial judge." *McFall v. State*, 71 N.E.3d 383, 390 (Ind. Ct. App. 2017). Perry bears the burden of persuading us that his sentence is inappropriate. *Foutch v. State*, 53 N.E.3d 577, 581 (Ind. Ct. App. 2016).

[30] "As to the nature of the offense, the advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed." *Kunberger v. State*, 46 N.E.3d 966, 973 (Ind. Ct. App. 2015). The advisory sentence for Perry's level 6 felony domestic battery conviction is one year, with a range of between six months and two and a half years. Ind. Code § 35-50-2-7(b). Perry received the maximum permissible sentence.

[31] The nature of the offense is found in the details and circumstances of the commission of the offense and the defendant's participation. *Croy v. State*, 953

N.E.2d 660, 664 (Ind. Ct. App. 2011). Perry concedes that his "participation in this violence against his wife was senseless and reprehensible." Appellant's Br. at 24. He goes on to say, however, that "it is clear from the record that his wife forgives him and continues to stand by him. She is also apologetic for whatever her part may have been in exacerbating this violence." *Id*. These considerations are irrelevant to the nature of the offense, and there is no evidence that Lydia "exacerbated" Perry's battery.

[32] "The character of the offender is found in what we learn of the offender's life and conduct." *Croy*, 953 N.E.2d at 664. Perry concedes that he "has a significant criminal history including juvenile adjudications as well as misdemeanor and felony convictions. What is also true is that most of these convictions involve batteries, domestic batteries, and invasion of privacy cases indicating that [he] must seek help concerning relationship and anger issues." Appellant's Br. at 24.[16] This is a colossal understatement.

[33] Perry was born in December 1985. In 2000, he was adjudicated a delinquent for leaving home three times (a status offense) and for disorderly conduct and criminal trespass, which would be misdemeanors if committed by an adult, as well as for attempted theft and receiving stolen auto parts, which would be class D felonies if committed by an adult. In August 2005, he received a one-year

---

[16] Perry also argues that he "has a dependent child which should have been considered a mitigating circumstance but was given little, if any, weight by the trial court." Appellant's Br. at 24. We fail to see how Perry's child is relevant to his character, and we note that the weight given to a particular mitigator is not subject to appellate review. *Weedman v. State*, 21 N.E.3d 873, 893 (Ind. Ct. App. 2014), *trans. denied* (2015).

sentence suspended to unsupervised probation for misdemeanor invasion of privacy and battery; in November 2005, he was ordered to serve all but ninety days of his sentence. In September 2005, he was again convicted of misdemeanor battery. In October 2005, he was convicted of class C felony battery, class D felony criminal recklessness, and class A misdemeanor carrying a handgun without a license and was sentenced to four years, with two years suspended to probation, which was later revoked. In 2006, he was convicted of class D felony failure to return to lawful detention. In 2009, he was convicted of class D felony domestic battery. In 2010, he was convicted of class A misdemeanor resisting law enforcement. In 2011, he was convicted of class D felony criminal confinement, class D felony domestic battery with a prior conviction, class D felony domestic battery committed in the presence of a child less than sixteen years old, class D felony invasion of privacy/violation of a protective order, and class A misdemeanor resisting law enforcement, and was also was found to be a habitual offender;[17] his probation was revoked, and he was placed in a home detention program, from which he was discharged after he was arrested on new charges, and he was given time served in April 2015. In October 2012, he was convicted yet again of class D felony invasion of privacy/violation of a protective order, and he was discharged from parole in September 2014.

---

[17] The presentence investigation report lists the criminal confinement and domestic battery charges as level 6 felonies, but the numbered felony sentencing scheme was not enacted until 2014. Appellant's App. Vol. 2 at 117.

Perry committed the instant offense against Lydia in December 2015. He violated a no-contact order by calling her over 170 times before and during his trial. He was ultimately charged with and pled guilty to four violations of that order. At the sentencing hearing, Perry claimed to be innocent of the battery and strangulation charges, which he had every right to do, but he also refused to sign and indicated a willingness to violate the new no-contact orders issued by the trial court. Perry contends that he is not the "worst of the worst" deserving of a maximum sentence, *id*. at 25, but his extensive criminal history (including multiple battery convictions), his failure to respond to more lenient treatment, and the troubling facts of this case overwhelmingly demonstrate otherwise. In sum, Perry has failed to carry his burden of persuading us that his two-and-a-half-year executed sentence for his level 6 felony domestic battery conviction is inappropriate in light of the nature of the offense and his character. Therefore, we affirm it.

Affirmed in part and reversed in part.

Barnes, J., and Altice, J., concur.