## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 20 2017, 6:13 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Troy D. Warner
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Laura R. Anderson
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Richard Lewis Roethler, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff* | September 20, 2017 <br><br> Court of Appeals Case No. 71A03-1704-CR-799 <br><br> Appeal from the St. Joseph Superior Court <br><br> The Honorable David P. Matsey, Judge <br><br> Trial Court Cause No. 71D05-1606-CM-3602 |

**Altice, Judge.**

### Case Summary

Following a bench trial, Richard Lewis Roethler was convicted of class A misdemeanor domestic battery. On appeal, Roethler contends that the trial court abused its discretion by admitting into evidence, under the excited utterance exception, the victim's hearsay statements to the responding officers. Roethler also challenges the sufficiency of the evidence supporting his conviction.

We affirm.

### Facts & Procedural History

After midnight on June 26, 2016, South Bend emergency dispatch received a 911 call from James Vaughn. He indicated that a naked woman had just approached him outside his home and asked for help. She was in distress and indicated to Vaughn that she had been beaten up and was able to escape from the house with her dog. The woman was identified as Christy Jackson.

Officer Steven Noonan arrived on the scene within a few minutes of the call. Upon his arrival, he encountered Vaughn and Jackson. Jackson was wearing a shirt that Vaughn had provided to her. She was disheveled and appeared scared and very upset. Officer Noonan testified that Jackson was still visibly shaking and clutching her small dog. While speaking with Jackson, Officer Noonan observed severe bruising to her arms that appeared to be of recent origin. Jackson informed Officer Noonan that Roethler, her live-in boyfriend, had grabbed her and thrown her to the ground during an argument and that she lost

consciousness. She indicated that Roethler would not let her leave the residence but she was able to escape through a back window.

[5] After arresting Roethler inside the home within ten minutes of the dispatch, Officer Luke Pickard spoke with Jackson. He observed "pretty severe bruising to both arms", as well as marks on Jackson's back and scratches and redness on her face. *Transcript* at 24. She was still very upset at this point, crying, shaky, and scared. Jackson advised Officer Pickard that Roethler, who was intoxicated at the time, grabbed her by the arms and threw her to the ground several times that night. Jackson reported that at some point during the attack, she hit her head and was knocked unconscious. Her shirt was also ripped off while being thrown around. When she regained consciousness, Roethler directed her to go to sleep. Jackson went into the bedroom and then escaped through the window. Officer Pickard observed that a back window to the residence was open with the drapes and blinds hanging outside of it.

[6] At the bench trial on January 19, 2017, Jackson's statements from the night of the incident were admitted through the testimony of Officers Noonan and Pickard, over Roethler's objection. The trial court admitted the hearsay statements under the excited utterance exception. The 911 call was also admitted into evidence.

[7] Jackson had since recanted her prior statements and, thus, testified on Roethler's behalf. She testified that on the night in question she had been on a three-day "bender" and had been mixing the prescription medication Belsomra

with tequila. *Transcript* at 42. She attributed her injuries to a prior altercation with two women and indicated that bite marks on her hands and arms appeared to be self-inflicted.[1] Jackson testified that she did not recall Roethler hurting her on the night in question. All she remembered was drinking and sleeping.

Officer Nicholas Pogotis testified in rebuttal. He had transported Jackson to the hospital and spent a significant amount of time with her after the incident. Officer Pogotis testified that he did not notice anything about Jackson that would lead him to believe she was intoxicated. He explained that Jackson was very coherent and able to walk with no issues.

At the conclusion of the evidence, the trial court found Roethler guilty as charged. Roethler was subsequently sentenced to one year executed. He now appeals.

## Discussion & Decision

### 1. Admission of Evidence

Roethler initially challenges the admission of Jackson's hearsay statements to Officers Noonan and Pickard under the excited utterance exception. Our standard of review in this regard is well-settled. We review evidentiary rulings for an abuse of discretion, which will be found where the ruling is clearly

---

[1] Regarding the bite marks, Jackson testified: "I believe them to be my teeth marks because I'm missing a bridge right here. I'm missing two teeth, and they appeared to be mine." *Id*. at 46.

against the logic and effect of the facts and circumstances. *Zanders v. State*, 73 N.E.3d 178, 181 (Ind. 2017). Further, we will not reweigh the evidence and will consider conflicting evidence in a light most favorable to the trial court's ruling. *Collins v. State*, 822 N.E.2d 214, 218 (Ind. Ct. App. 2005), *trans. denied*.

[11] The excited utterance exception, Ind. Evidence Rule 803(2), provides that a "statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused" is not excluded by the rule against hearsay, regardless of the availability of the declarant as a witness at trial. In order for a statement to be admitted under this exception, three elements must be present: (1) a startling event occurred; (2) a statement was made by a declarant while under the stress of excitement caused by the event; and (3) the statement relates to the event. *Boatner v. State*, 934 N.E.2d 184, 186 (Ind. Ct. App. 2010). This is not a mechanical test, and the heart of the inquiry is whether the declarant was incapable of thoughtful reflection before making the statement. *Id*.

[12] Roethler argues that there was insufficient evidence that a startling event occurred prior to Jackson's statements to police. In this regard, he relies on Jackson's trial testimony that she was drinking heavily and "under the influence of the hallucinogenic prescription Belsomra." *Appellant's Brief* at 12. Additionally, in arguing that Jackson's bruising was not recent, Roethler directs us to photographs in the record and asserts that "[w]hen one looks…closely, the bruises are a mosaic of coloration." *Id*. at 13. These arguments boil down to

requests for us to reweigh the evidence, which we cannot do. *See Collins*, 822 N.E.2d at 218.

[13] The evidence favorable to the trial court's ruling reveals that Jackson sought help from Vaughn – a stranger – after exiting an alley unclothed in the middle of the night. She was in distress and informed Vaughn that she had been beaten up and had escaped. Police responded within minutes of the dispatch and found Jackson still shaking, crying, and upset. She had severe bruising on her arms, which appeared to Officer Noonan to be "recent" and consistent with "being grabbed". *Transcript* at 17. Further, Officer Pogotis offered testimony refuting Jackson's later claims that she was intoxicated and under the influence of Belsomra on the night in question. In light of this evidence, the trial court did not abuse its discretion by admitting the challenged evidence under the excited utterance exception.

## 2. Sufficiency of the Evidence

[14] In a similar vein, Roethler also presents a general sufficiency claim. He contends that the State failed to establish beyond a reasonable doubt that he touched Jackson in a rude, insolent, or angry manner. Once again, he directs us to Jackson's trial testimony regarding her use of alcohol and drugs on the night in question. Roethler asserts that there is "great credibility" in Jackson's testimony and "great reasons to doubt" her statements to police. *Appellant's Brief* at 15. He continues, "the trial testimony of Jackson is credible and aligns

with the evidence in the photos and with the hallucinogenic effect that Belsomra would have had on her." *Id*. at 16.

[15] We reject this blatant request to reweigh the evidence and assess witness credibility. *See Perry v. State*, 78 N.E.3d 1, 8 (Ind. Ct. App. 2017) (observing the well-established rule that we do not reweigh evidence or assess the credibility of witnesses in reviewing a sufficiency of the evidence claim). The factfinder is obliged to determine not only whom to believe, but also what portions of conflicting testimony or evidence to believe. *Id*. Thus, it was wholly within the trial court's discretion, as trier of fact, to disbelieve Jackson's trial testimony and rely, instead, on her statements made on the night in question. Because there was ample probative evidence presented from which the trial court could have found Roethler guilty beyond a reasonable doubt of battering Jackson, we affirm the conviction.

[16] Judgment affirmed.

Baker, J. and Bailey, J., concur.