## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 23 2019, 11:50 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Leanna Weissman
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert A. Rowlett
Angela Sanchez
Deputy Attorneys General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jonathan S. Couch, *Appellant-Defendant,* | May 23, 2019 |
| v. | Court of Appeals Case No. 18A-CR-2753 |
| | Appeal from the Switzerland Circuit Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable W. Gregory Coy, Judge |
| | Trial Court Cause No. 78C01-1711-F4-418 |

**Barteau, Senior Judge.**

# Statement of the Case

[1] After his plea agreement was accepted by the trial court, Jonathan S. Couch appeals from the trial court's order sentencing him to nine years executed in the Indiana Department of Correction (DOC). He argues that his sentence is inappropriate in light of the nature of the offense and the character of the offender and requests that we resentence him to no more than two years incarcerated. We affirm.

# Issue

[2] Couch presents the following question for our review: Is the nine-year sentence inappropriate in light of the nature of the offense and the character of the offender?

# Facts and Procedural History

[3] On October 12, 2017, at approximately 2:00 a.m., Couch and his cousin were taking Klonopin or Xanax and smoking methamphetamine. Sometime between 4:30 and 5:00 a.m., Couch, who was by then alone, went to his ex-girlfriend's house and pushed in the back door. He had purchased a pit bull when he was still in a relationship with her. However, he left the dog he had named Felony with her when they separated so her daughter could continue to enjoy the pet. That morning he decided he wanted to reclaim the dog. In the process of collecting the dog, he also removed three televisions, a BB gun, and a

CPAP[1] machine worth $8,000.00 from the house along with other items, including a backpack containing books belonging to his ex-girlfriend's daughter.

[4] When Couch's ex-girlfriend arrived home later in the day on October 12, 2017, it was immediately apparent to her that her home had been "gone through" and that many of her possessions were missing. Appellant's App. Vol. II, p. 18. She contacted the Switzerland County Sheriff's Department and reported that items belonging to her were stolen from her home.

[5] When officers arrived to investigate the report, they asked Couch's ex-girlfriend if she knew of any possible suspects. She suggested Couch, who had lived with her until November 2016. During the investigation, a neighbor reported seeing a Dodge Dakota at the front of the residence. Later, officers learned that Couch's brother owned a vehicle matching that description.

[6] Officers contacted Couch and went to his residence. Upon arriving, an officer observed Felony through the window of the house while that officer was waiting outside. When Couch came to answer the door, the officer asked him if he knew anything about a pit bull stolen from his ex-girlfriend's home. Couch, interrupting the officer, volunteered that someone, whose name he did not know, had dropped the dog off at his residence. The officer told Couch that he believed he was lying and demanded that the dog and stolen televisions be returned. Couch told the officer he would retrieve the stolen items. He

---

[1] CPAP is the acronym commonly used for continuous positive airway pressure machines.

returned with two of the missing televisions and the pit bull, but he did not remember taking any of the other items reported missing.

[7] An officer from the Switzerland County Sheriff's Department interviewed Couch on October 16, 2017, after administering his advice of rights. Couch admitted that he used his brother's Dodge Dakota on October 11, 2017. He and his cousin smoked some methamphetamine and took a pill (either Klonopin or Xanax). Couch described going to his ex-girlfriend's house for the primary purpose of reclaiming the dog. He said he would be able to find the third television he had taken and would return it. As for the other items reported missing, Couch stated that he just "took stupid shit that made no sense," and further stated that "he was pissed and wanted to burn the place to the ground." *Id.* at 20. When the officer asked about the location of other items that were taken, Couch explained that "he was on drugs and basically woke up the next morning not really knowing what he did." *Id.*

[8] On November 15, 2017, Couch was charged with burglary, a Level 4 felony.[2] On September 14, 2019, Couch agreed to plead guilty to the burglary charge, and the State agreed to cap the maximum sentence at nine years and to dismiss the remaining charges of theft and residential entry. Otherwise, the parties agreed to leave sentencing open to the discretion of the trial court.

---

[2] Ind. Code § 35-43-2-1(1) (2014).

[9] After accepting the parties' plea agreement, the trial court sentenced Couch to nine years executed in the DOC with credit for 333 actual days served, and no restitution was ordered at that time. The trial court advised that should Couch continue to exhibit good behavior like he had in jail while incarcerated in the DOC, the trial court would consider a petition for a sentence modification. Couch now appeals.

## Discussion and Decision

[10] Couch claims that the trial court's sentence is inappropriate in light of the nature of the offense and the character of the offender. The plea agreement provided that Couch's maximum sentence exposure was capped at nine years. However, the trial court retained the discretion to fashion and impose a sentence within that cap.

[11] "Even when a trial court imposes a sentence within its discretion, the Indiana Constitution authorizes independent appellate review and revision of this sentencing decision." *Hoak v. State*, 113 N.E.3d 1209, 1209 (Ind. 2019) (citing Ind. Const. art. 7, §§ 4, 6; *Eckelbarger v. State*, 51 N.E.3d 169, 170 (Ind. 2016)). "Indiana appellate courts may revise a sentence if 'after due consideration of the trial court's decision' they find 'the sentence is inappropriate in light of the nature of the offense and the character of the offender.'" *Id.* (quoting Ind. Appellate Rule 7(B)). We emphasize that this analysis is limited to "not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *King v. State,* 894 N.E.2d 265, 268 (Ind.

Ct. App. 2008) (citing *Fonner v. State*, 876 N.E.2d 340, 343 (Ind. Ct. App. 2007)). The defendant bears the burden of persuading the appellate court that "his or her sentence has met this inappropriateness standard of review." *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[12]  The sentencing range for burglary is imprisonment for a fixed term of between two years and twelve years with the advisory sentence being six years. Ind. Code §35-50-2-5.5 (2014). Couch's sentence was capped at nine years which is below the statutory maximum sentence, yet slightly above the advisory sentence.

[13]  In Justice Dickson's concurring opinion in *Childress* he expressed his opinion that "[a] defendant's conscious choice to enter a plea agreement that limits the trial court's discretion to a sentence less than the statutory maximum should usually be understood as strong and persuasive evidence of sentence reasonableness and appropriateness." 848 N.E.2d at 1081. He further stated that, in his opinion, "courts considering future claims for appellate sentence review following such plea agreements [are permitted] to grant relief only in the most rare, exceptional cases." *Id.*

[14]  As our Supreme Court said later, "[w]hile we apply our power under Rule 7(B) sparingly, we may revise sentences, 'when certain broad conditions are satisfied.'" *Taylor v. State*, 86 N.E.3d 157, 165 (Ind. 2017) (quoting *Rice v. State*, 6 N.E.3d 940, 947 (Ind. 2014)). The Court further stated that "[s]entence appropriateness thus turns on 'myriad. . .factors that come to light in a given

case.'" *Id.* (quoting *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008)). "We begin this analysis with 'substantial deference to the trial court's sentence' then 'independently examine' the defendant's offenses and character." *Id.* (quoting *Satterfield v. State*, 33 N.E.3d 344, 355 (Ind. 2015)).

"The nature of the offense is found in the details and circumstances of the commission of the offense and the defendant's participation." *Perry v. State*, 78 N.E.3d 1, 13 (Ind. Ct. App. 2017). Couch, who was under the influence of methamphetamine and a pill or pills, stole property from his ex-girlfriend. That property was worth approximately $10,000 and included televisions, a pit bull, and an $8,000 CPAP machine. He also stole his ex-girlfriend's daughter's backpack containing many things including books.

Couch's case is different from that of *Frye v. State*, 837 N.E.2d 1012 (Ind. 2005), cited by him in support of a sentence reduction. In *Frye*, our Supreme Court reduced a defendant's forty-year sentence for his burglary conviction and habitual offender adjudication, finding that as respects the nature of the offense (1) there was a marginal pecuniary loss of property ($395), (2) the home was unoccupied, (3) the defendant was unarmed, and (4) most of the items were returned to the victim after the defendant's arrest. Additionally, there is no evidence in that opinion that Frye knew his victim. Couch, on the other hand, took items valued at approximately $10,000.00. Although there is evidence that Couch returned some of the items taken, the record is unclear whether some of the more expensive items, such as the $8,000.00 CPAP machine, were returned.

Furthermore, Couch, unlike Frye, knew his victims and wished to engage in vengeful behavior against them.

[17] As for Couch's character, we note, and he acknowledges, his extensive juvenile history and adult criminal history. Couch's juvenile history consists of thefts, burglaries, and an auto theft. Three of those charges were waived into adult court. His adult criminal history consists of multiple convictions of burglary, a conviction of theft, and a felony conviction of possession of a dangerous device or material by a prisoner. Couch's continued pattern of committing crimes demonstrates his refusal to reform to a law-abiding life. Of note, he has at least 100 conduct violations during his prior periods of incarceration and has one parole violation.

[18] Even though Couch disavowed any current issues with substance abuse in his pre-sentence investigation report, he argues on appeal that his substance abuse and addiction are similar to those factors our Supreme Court discussed in *Frye* when reducing a sentence. In its review of Frye's character under the inappropriate sentence analysis, our Supreme Court noted Frye's lifelong struggle with alcoholism and unsuccessful treatment for such. The Court stated as follows:

> While we do not condone Frye's past or current violations of the law, we cannot conclude that those transgressions even when aggregated demonstrate a character of such recalcitrance or depravity to justify a sentence of 40 years.

837 N.E.2d at 1015.

[19]    In contrast, Couch, although under the influence of illegal substances, made the decision to break into his ex-girlfriend's house and take intimate items he knew about from his previous relationship with her. He took her medical device (the CPAP machine), her daughter's backpack filled with books, and a pet dog he had left for her daughter's enjoyment. Many of the items taken illustrate the vengeful nature of the criminal activity. Indeed, Couch admitted "he was pissed and wanted to burn the place to the ground." Appellant's App. Vol. II, p. 20.

[20]    Couch has not met his burden of persuading us that his sentence is inappropriate in light of the nature of the offense or the character of the offender.

## Conclusion

[21]    Based upon the foregoing, we affirm the trial court's sentencing decision.

[22]    Affirmed.

Baker, J., and Riley, J., concur.