## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 30 2019, 9:33 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tiffany A. McCoy
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| James Andrew Freeman, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | October 30, 2019 <br><br> Court of Appeals Case No. 19A-CR-1065 <br><br> Appeal from the Vigo Superior Court <br><br> The Honorable John T. Roach, Judge <br><br> Trial Court Cause No. 84D01-1806-F1-2178 |

**Pyle, Judge.**

# Statement of the Case

James Freeman ("Freeman") appeals the sentence imposed after he pled guilty to Level 1 felony attempted child molesting[1] and Level 4 felony child molesting.[2]  Freeman argues that his sentence is inappropriate in light of the nature of the offense and his character.  Concluding that Freeman's sentence is not inappropriate, we affirm his sentence.

We affirm.

# Issue

Whether Freeman's sentence is inappropriate.

# Facts

Freeman lived with his ex-girlfriend, her two children, including her daughter, S.T. ("S.T."), and her new boyfriend.  Freeman and his ex-girlfriend had lived together off and on for seven years.  On June 15, 2018, Freeman and S.T., who was six years old at the time, went to the back bedroom of the home to lie down and watch a movie.  At some point, S.T. stated that she was tired and asked Freeman if she could go to sleep.  Freeman laid behind S.T. so the two were

---

[1] IND. CODE § 35-42-4-3.

[2] *Id.*

facing the same direction. Freeman then pulled his and S.T.'s pants down and attempted to insert his penis into S.T.'s anus.

[4] The next day, S.T. informed her mother what Freeman had attempted. S.T.'s mother and other family members confronted Freeman about the incident. Freeman stated that voices inside his head told him to touch S.T. He then admitted that he knew what he was doing when he touched S.T. and that since everyone already thought he was a child molester, he wanted to prove them right. S.T.'s mother then reported the incident to the police and took S.T. to the hospital.

[5] A deputy from the Vigo County Sheriff's Office went to the hospital and interviewed S.T. and her family members. During a subsequent interview with the Department of Child Services, S.T. stated that Freeman was "able to get his 'no-no' between her butt cheeks" but that she did not believe he was "able to get his 'no-no' into her 'butt-hole.'"[3] (App. 17). S.T. also underwent a sexual assault examination. The State then charged Freeman with Level 1 felony attempted child molesting and Level 4 felony child molesting.

[6] In October 2018, Freeman filed a "Motion for Psychiatric Evaluation[,]" which the trial court granted. The trial court ordered two doctors to perform a competency evaluation of Freeman. (App. 35). After receiving both reports,

---

[3] When asked during the interview what she meant by "no-no," S.T. pointed to the male genital area of a male drawing.

the trial court found that Freeman had "the ability to understand the proceedings and assist in his defense." (App. 63). Soon thereafter, Freeman pled guilty as charged. Under the terms of the plea agreement, the State agreed to dismiss a pending check fraud case. The plea agreement left sentencing open "except that the counts [would] run concurrent and [Freeman] [would] not be sentenced to a term of imprisonment greater than 35 years." (App. 69).

[7] At the sentencing hearing, the State called two detectives, one from the Indiana State Police and the other from the Vigo County Sheriff's Office, to testify about a child pornography investigation that involved Freeman. The witnesses described Facebook conversations they observed between Freeman and another Facebook user. During the conversations with the other Facebook user, Freeman: (1) discussed molesting children; (2) received child pornography; (3) discussed sending child pornography in return; (4) sent non-pornographic photos of S.T; and (5) bragged about how much S.T. enjoyed the sexual acts he described.[4] Later, the State read two victim impact statements written by S.T.'s mother and grandmother detailing the negative effects Freeman's crime had had on S.T. and her family. Specifically, S.T.'s mother and grandmother explained that S.T. is afraid to be alone, has major trust issues, and suffers from bowel and stomach issues.

---

[4] The State agreed not to file charges against Freeman for the child pornography and instead used the details of the investigation during argument for sentencing as an aggravating factor.

[8] The trial court then found both mitigating and aggravating factors present. The trial court identified the following mitigating factors: (1) Freeman's mental health issues; and (2) his acceptance of responsibility. The trial court identified the following aggravators: (1) the harm to the victim; (2) the fact that Freeman enjoyed a position of trust and had care, custody or control over S.T.; and (3) Freeman's prior criminal history and delinquent behavior, including the fact that he was on probation when he committed the instant offense. The trial court found that the aggravators outweighed the mitigators and necessitated an aggravated sentence. The trial court then merged the Level 4 felony into the Level 1 felony for double jeopardy reasons and sentenced Freeman to thirty-five (35) years in the Department of Correction. Freeman now appeals.

## Decision

[9] Freeman argues that his sentence of thirty-five years is inappropriate. "This Court may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). "The 7(B) 'appropriateness' inquiry is a discretionary exercise of the appellate court's judgment, not unlike the trial court's discretionary sentencing determination." *Knapp v. State*, 9 N.E.3d 1274, 1291-92 (Ind. 2014), *cert. denied*. "On appeal, though, we conduct that review with substantial deference and give due consideration to the trial court's decision—since the principal role of our review is to attempt to leaven the outliers, and not to achieve a perceived correct sentence." *Id*. at 1292 (internal quotation marks, internal bracket, and citation omitted). "Appellate Rule 7(B) analysis is not to determine whether another

sentence is more appropriate but rather whether the sentence imposed is inappropriate." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012) (internal quotation marks and citation omitted), *reh'g denied*. The defendant has the burden of persuading the appellate court that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Whether we regard a sentence as inappropriate turns on the "culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008).

[10] When determining whether a sentence is inappropriate, we acknowledge that the advisory sentence is the starting point the General Assembly has selected as an appropriate sentence for the crimes committed. *Childress*, 848 N.E.2d 1081. Here, Freeman pled guilty to a Level 1 felony and a Level 4 felony. The trial court merged Freeman's Level 4 felony conviction into his Level 1 felony conviction. The sentencing range for a Level 1 felony is "for a fixed term of between twenty (20) and fifty (50) years, with the advisory sentence being thirty (30) years." I.C. § 35-50-2-4. The trial court sentenced Freeman to thirty-five (35) years. Accordingly, the trial court imposed an aggravated sentence five years above the advisory sentence.

[11] This Court has recognized that the nature of the offense is found in the details and circumstances of the commission of the offense and the defendant's participation. *Perry v. State*, 78 N.E.3d 1, 13 (Ind. Ct. App. 2017). As Freeman himself acknowledges, the nature of his offense is "one of the most serious offenses that can be committed[.]" (Freeman's Br. 7). Here, Freeman

attempted to molest his ex-girlfriend's six-year-old daughter while he thought she was asleep. In addition, Freeman was in a position of trust over S.T. and violated that trust. Freeman's offense had a devastating effect on S.T., who, according to her mother and grandmother, suffers from his actions in a variety of ways. *See Lasley v. State*, 510 N.E.2d 1340, 1342 (Ind. 1987) (sexual victimization of children often leaves permanent psychological damage that is more devastating than physical injuries).

[12] When considering the character of the offender prong of our inquiry, one relevant consideration is the defendant's criminal history. *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007). Here, Freeman's prior convictions for fraud and domestic battery reflect poorly on his character. *See Id.* (any criminal history reflects poorly on a person's character). Additionally, Freeman was on probation for his domestic battery offense at the time he committed the instant offense. Moreover, we disagree with Freeman's assertion that his mental health issues require revision of his sentence. The trial court was aware of Freeman's mental health when it sentenced him and considered it a mitigating factor. Accordingly, Freeman has failed to persuade us that the nature of the offense or his character makes his sentence inappropriate. Therefore, we affirm the sentence imposed by the trial court.

[13] Affirmed.

Robb, J., and Mathias, J., concur.