OPINION
BAILEY, Judge.
Case Summary
Paul R. Semenick (“Semenick”), a long-term member of Lakeview Christian Church (“Lakeview”), appeals his conviction for Criminal Trespass, as a Class A misdemeanor,[1] arising out of his attendance at Sunday morning services. Sem-enick challenges the sufficiency of the evidence to support the conviction.[2] We reverse.
Facts and Procedural History
On September 5, 2010, certain worship-pers at Lakeview sought to impose their will over another similarly situated wor-shipper during Sunday morning services. One parishioner sought to engage the authority of the State to intervene in a private disagreement over the degree of reverence for the church sanctuary, and this ultimately led to a criminal conviction and order to stay off Lakeview property. We do not “take it on faith” that the off-duty police officer, acting as a security guard, had unfettered discretion to take sides and remove one worshipper at the behest of another.
On September 5, 2010, Semenick attended a Sunday morning worship service at Lakeview. During the musical portion of the service, Semenick approached Manuel Halbert (“Halbert”), a volunteer greeter, to complain that Halbert was speaking too loudly with Sheriffs Deputy Jennifer Crit-tendon (“Deputy Crittendon”). Deputy Crittendon then moved out of the sanctuary, and Halbert began to speak with James Martin (“Martin”).
Semenick left the sanctuary to seek the assistance of Donald Henry (“Henry”), the head volunteer greeter. Semenick requested that Henry direct Halbert and Martin to be quiet or continue their conversation outside the sanctuary. Henry responded that Halbert needed to welcome people, as “that’s his job.” (Tr. 72.) Martin nonetheless decided to apologize to Semenick. He approached Semenick by placing a hand on his shoulder. Semenick ordered Martin “get your hand off me” and Henry asked both men to sit down.[3] (Tr. 72.) They complied.
*9 Yet, Halbert left the sanctuary to seek assistance from security officers who were at the main entrance of the Lakeview parking lot. He located Sergeant John Dierdorf (“Sergeant Dierdorf’), an off-duty Town of Clermont police officer who provided services to Lakeview on a call-in basis and would “usually roam the parking lot in [his] car.”[4] (Tr. 100.) And although Semenick was seated and participating in the service, Sergeant Dierdorf entered the sanctuary and asked Semenick to leave. Semenick initially refused to leave but, upon threat of forcible removal, moved into the main hallway. Sergeant Dierdorf directed Semenick to exit the door to his right.
In the hallway, Semenick approached Henry although Sergeant Dierdorf twice more insisted that Semenick leave. Sem-enick told Henry “you need to tell your rent-a-cops they can’t do nothing to me.” (Tr. 104-5.) Henry responded, “these officers are here by church’s orders ... they do traffic and everything else.” (Tr. 73.) According to Henry, “[Semenick] kept on ranting” and Sergeant Dierdorf responded, “I’ll show you what a rent-a-cop can do.” (Tr. 73.) Semenick was arrested and charged with Criminal Trespass and Disorderly Conduct.
Semenick was tried before a jury on October 25, 2011. Prior to the presentation of evidence, the trial court, without opposition from the State,[5] quashed subpoenas that had been issued to a Lakeview senior pastor and another individual whose position was not specified. At the conclusion of the trial, Semenick was acquitted of Disorderly Conduct but convicted of Criminal Trespass. The trial court sentenced Semenick to 365 days imprisonment, suspended 363 days, and ordered him to stay away from Lakeview (absent an invitation of fellowship from the church). This appeal ensued.
Discussion and Decision
When the sufficiency of the evidence to support a conviction is challenged, we neither reweigh the evidence nor judge the credibility of the witnesses, and we affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. Wright v. State, 828 N.E.2d 904, 905-06 (Ind.2005).
Pursuant to Indiana Code section 35-43-2-2(a)(2), one commits the offense of Criminal Trespass when he “not having a contractual interest in the property, knowingly or intentionally refuses to leave the real property of another person after having been asked to leave by the other person or that person’s agent.” “The criminal trespass statute’s purpose is to punish those who willfully or without a bona fide claim of right commit acts of trespass on the land of another.” Woods v. State, 703 N.E.2d 1115, 1117 (Ind.Ct. *10 App.1998) (citing Myers v. State, 190 Ind. 269, 273, 130 N.E. 116, 117 (1921)). The State must prove every element of the crime charged beyond a reasonable doubt. In re Winship, 397 U.S. 358, 361, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).
“Contractual interest,” as that phrase is used in the criminal trespass statute, refers to the right to be present on another’s property, arising out of an agreement between at least two parties that creates an obligation to do or not to do a particular thing. Taylor v. State, 836 N.E.2d 1024, 1026 (Ind.Ct.App.2005), trans. denied. “[T]he State need not ‘disprove every conceivable contractual interest’ that a defendant might have obtained in the real property at issue.” Lyles v. State, 970 N.E.2d 140, 143 (Ind.2012) (quoting Fleck v. State, 508 N.E.2d 539, 541 (Ind.1987)). “[T]he State satisfies its burden when it disproves those contractual interests that are reasonably apparent from the context and circumstances under which the trespass is alleged to have occurred.” Id.
In Lyles, the State disproved the defendant’s contractual interest where there was evidence that the “irate and disrespectful” defendant was neither an owner nor an employee of the bank, as well as evidence that the bank manager had authority to ask customers to leave the bank premises. Id. at 142. Here, there is uncontroverted ' testimony that Semenick was a church member, and an absence of evidence that Sergeant Dier-dorf had authority to demand, without more, that a worshipper leave the sanctuary during Sunday services. Effectively, he intervened between parishioners who presumably had equal interests in the premises, and chose who would stay and who would go.
Semenick was not a stranger in the midst of the church, but was rather a longtime contributor, participant, and believer. He had attended Lakeview services on a regular basis for twenty-two to twenty-three years. He had enrolled his children in Lakeview’s elementary school for several years. He had “prayed for people that [he] thought needed it and they’ve prayed for [him].” (Tr. 131.) He considered himself to be a member of Lakeview, testifying that Lakeview did not have a formal procedure for attaining membership.
Moreover, Semenick’s membership was not challenged by the State in the trial court. There was no testimony from a pastor or member of the Lakeview governing board that Semenick had failed to comply with a membership requirement or was not a member. Thus, the evidence indicates only that Semenick was a church member having a right to be present at a church service on church property “arising out of an agreement.”[6] Id.
*11 Persons having the same interest in being present on the premises disagreed regarding the reverence to be afforded the sanctuary of the church. One parishioner insisted upon involving the Sunday morning parking lot patrol. Although the record suggests that Sergeant Dierdorf performed services for Lakeview as an independent contractor, there was no testimony from a pastor, governing board member or employee that Sergeant Dier-dorf had the authority, without more, to take sides and ask a parishioner to leave, let alone threaten to forcibly remove a member from the sanctuary, during Sunday morning services. Lyles is distinguishable on this basis. Even more compelling, a bank is a commercial setting and we should be ever more diligent to hold the State to its burden of proof where such fundamental rights of assembly and worship are implicated.
Clearly, one having a contractual interest in being on property is nevertheless not entitled to make unreasonable noise or disrupt services. See Woods, 703 N.E.2d at 1118 (“Woods’ membership did not entitle her to make unreasonable noise and disrupt Bally’s facility in demanding the return of her membership card”). See also A.E.B. v. State, 756 N.E.2d 536, 540 (Ind.Ct.App.2001) (concluding that a student “violated whatever contract existed when she interfered with the educational activities at Coleman Middle School to the point where she committed the crime of disorderly conduct.”). Nonetheless, although Semenick’s words and conduct were arguably unfriendly, it was his prerogative to verbally rebuff an unwanted touching and to seek out a volunteer coordinator to resolve a noise complaint. One could argue that Halbert’s boisterousness and gregariousness constituted unreasonable noise and it was certainly disruptive to at least one other worshipper. Regardless, the church service continued uninterrupted. Indeed, the jury acquitted Sem-enick of Disorderly Conduct. In short, there is evidence of unpleasant demeanor by several in attendance on that fateful morning but an unpleasant demeanor does not always equate to criminality.[7]
The evidence does not establish that Sergeant Dierdorf was given the authority to remove someone from the church sanctuary. In fact, the only authority given to Sergeant Dierdorf that is in the record is that he was to direct traffic and see that no one “messed” with the cars — none of *12 which is relevant to the issues herein. Accordingly, there is insufficient evidence to persuade a reasonable fact-finder that Sergeant Dierdorf acted as Lakeview’s agent when he removed Semenick. Indeed, by Sergeant Dierdorf s own account, he typically patrolled the parking lot and had not made a prior arrest in the church sanctuary. Distressingly, the instant arrest appears to have neatly coincided with Sem-enick’s rude and repetitious use of the phrase “rent-a-cop.” Without testimony from a church official disavowing Semen-ick’s contractual interest and otherwise clearly delineating the limits of a member’s contractual interests and the breadth of an occasional part-time contract employee’s authority, the State failed in its burden to prove material elements of Criminal Trespass within the meaning of Indiana Code Section 35-43-2-2(a)(2). Accordingly, there is insufficient evidence to sustain Semenick’s conviction.
Reversed.
ROBB, C.J., concurs.
MATHIAS, J., dissents with opinion.

. Ind.Code § 35-43-2-2.

. In light of our disposition for insufficiency of the evidence, we need not address Semen-ick's contention that he could not be prosecuted under the Criminal Trespass statute because he was exercising his First Amendment right to worship. Semenick neither moved to dismiss the charge on this basis nor raised any constitutional issue in the trial court. Nonetheless, it is readily apparent that fundamental rights are implicated, including freedom of worship and freedom of assembly.

.The dissent characterizes Semenick’s tone as yelling, but we do not feel it appropriate to over-dramatize the verbal discord, given that *9 there was conflicting evidence as to any level of disruption. For example, Henry testified that Semenick had only been "a little loud” when asking Martin to remove his hand from Semenick’s shoulder and, as far as Henry was concerned, “the worship service was not interrupted, disrupted, stopped, [or] altered.” (Tr. 76-77.) Indeed, the jury acquitted Semen-ick of Disorderly Conduct and the evidence most favorable to this verdict of acquittal suggests only that a minor incident had ensued.

. It is unclear from the record whether Sergeant Dierdorf also attended services at Lake-view, as he testified that he prefers to attend church rather than police the parking lot. In addition, he was dating, and later married, Deputy Crittendon.

. Upon questioning from the trial court, the prosecutor indicated that one of the individuals subject to the subpoenas lacked “personal information regarding the facts of the case.” (Tr. 10.)

. The dissent has expressed the view that the majority "wholly credits Mr. Semenick's self-serving testimony.” Op. at 15. Indeed, Sem-enick’s testimony in regard to his Church membership may be self-serving, but it is the sole testimony offered regarding Semenick's interest in being on Church premises. We could speculate that — had the trial court not quashed the subpoenas of Church leaders Semenick had sought to offer as witnesses— testimony might have been presented by a pastor or Church employee regarding Semen-ick’s lack of contractual interest. However, with full acquiescence of the State, such testimony was not offered. Where no evidence is offered by the State on an essential element of a charged crime, we cannot draw inferences favorable to the State from non-existent evidence. We will affirm a conviction only if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. Wright, 828 N.E.2d at 906 (emphasis added).

. The State did not confine itself to the presentation of relevant evidence, that is, evidence having a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Ind. Evidence Rule 401. Rather, the prosecutor improperly suggested that Semen-ick was dangerous, in a manner designed to inflame the passions of the jury. The prosecutor inquired of Semenick whether he had a lawsuit against the City of Indianapolis. Semenick conceded that he had filed a lawsuit, but explained it was "unrelated” to the criminal charges against him. (Tr. 149.) Undeterred, the prosecutor asked, “So were you concerned when they found all the weapons in your car?” (Tr. 151.) Semenick was then obliged to explain that the rifles were part of his gun collection, all were unloaded, and they were locked in his trunk so that his son (convicted of credit card fraud at age 18) would not have access to any weapon in violation of the law. The prosecutor advised the trial court, upon inquiry, that Semenick had not been charged with any weapons violation. Nonetheless, the damage was done. Semen-ick, who had a Second Amendment right to lawfully bear arms, was portrayed — by the misconduct of the prosecutor intent upon introducing extraneous and inflammatory material — as a threatening individual in the midst of the Church. The dissent exacerbates the harm ensuing from the improper line of questioning by suggesting that unlawful conduct was afoot because Semenick's locked vehicle contained unloaded rifles.