

FILED

Aug 19 2016, 8:55 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Suzy St. John
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jessi Apollos,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | August 19, 2016<br><br>Court of Appeals Case No.<br>49A04-1601-CR-15<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Amy Jones, Judge<br><br>Trial Court Cause No.<br>49G08-1501-CM-618 |

**Baker, Judge.**

[1] Jessi Apollos appeals her conviction for Criminal Trespass,[1] a class A misdemeanor. Apollos argues that there is insufficient evidence supporting the conviction. We agree, and reverse and remand with instructions to vacate the conviction.

## Facts

[2] In December 2014, Apollos was seeking to move into a new residence. After a conversation with Apollos on social media, Andre Francois told Apollos that he was seeking to rent out a room in his house. On December 5, 2014, Apollos went to see Francois's residence. He offered her a furnished bedroom in his house in exchange for rent, and Apollos accepted. Francois did not draft a written lease, and the parties never agreed upon a precise amount of rent that would be owed by Apollos.

[3] Apollos moved in on December 14, 2014. Francois knew that Apollos was leaving her former residence permanently. He had cleaned out a closet in his own bedroom for her belongings. Apollos kept all of her belongings at the house, had a key to the house, and received mail at the house. Apollos and Francois became involved in a sexual relationship. Shortly after Apollos moved in, her car was stolen and she lost her job. Francois indicated that he might be willing to accept childcare services (he has a minor child who lives in

[1] Ind. Code § 35-43-2-2.

the home) in exchange for Apollos's residency. She provided overnight childcare on approximately ten occasions.

[4] On January 6, 2015, Apollos and Francois got into an argument. Francois ultimately told Apollos that she could not live there anymore. He was angry and packed up her belongings, telling her to leave the house about ten times. Each time Apollos responded, "No, I live here." Tr. p. 25. She called the police and was frantic and sobbing, saying that her "boyfriend" was trying to kick her out of their house and she had nowhere to go. State's Ex. 2. Indianapolis Police Officer Scott Emminger responded to the scene and found Apollos "upset" and "loud," and asked her to calm down. Tr. p. 57-58. Apollos told Officer Emminger that she lived there, but as she had no written lease to show him as proof, he asked her to leave. She declined the officer's offer to drive her to a homeless shelter. Ultimately, he arrested her for criminal trespass.

[5] On January 6, 2015, the State charged Apollos with class A misdemeanor criminal trespass. On March 27, 2015, the State added a charge of class B misdemeanor disorderly conduct.[2] On December 14, 2015, the jury found Apollos guilty as charged. The same day, the trial court sentenced Apollos to an aggregate term of 365 days, fully suspended to probation. Apollos now appeals.

---

[2] Apollos is not appealing the disorderly conduct conviction.

# Discussion and Decision

[6]    Apollos argues that the evidence is insufficient to support her criminal trespass conviction. When reviewing a claim of insufficient evidence, we will consider only the evidence and reasonable inferences that support the conviction. *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). We will affirm if, based on the evidence and inferences, a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). To convict Apollos of class A misdemeanor criminal trespass, the State was required to prove beyond a reasonable doubt that she knowingly or intentionally refused to leave Francois's residence after Francois asked her to leave, and that Apollos had no contractual interest in the property. I.C. § 35-43-2-2(b)(2). Apollos argues that the State failed to establish that she had no contractual interest in the property and that she acted with the requisite mens rea.[3]

[7]    The State need not disprove every conceivable contractual interest, but it must disprove contractual interests reasonably apparent from the circumstances under which the trespass allegedly occurred. *Lyles v. State*, 970 N.E.2d 140, 143 (Ind. 2012). A "contractual interest" is the right to be present on another's property, arising from an agreement between two parties that creates an obligation to do or not do a particular thing. *Semenick v. State*, 977 N.E.2d 7, 10

---

[3] Because we resolve this case in Apollos's favor based on the element of lack of contractual interest, we need not and will not consider her argument regarding mens rea.

(Ind. Ct. App. 2012). A lease need not be in writing to be a binding agreement. *Barber v. Echo Lake Mobile Home Cmty.*, 759 N.E.2d 253, 255 (Ind. Ct. App. 2001).

[8] In this case, both Apollos and Francois understood that an agreement existed, pursuant to which Apollos would live at Francois's residence in exchange for rent and/or childcare services for Francois's daughter.[4] Tr. p. 19-21, 23-24, 71-72, 79, 82-83. The precise terms may not have been agreed upon, but both parties understood that an agreement existed. Even if Apollos had breached that agreement by failing to make a rent payment, the lease—and Apollos's contractual interest in the property—did not automatically terminate. Ind. Code § 32-31-1-8(5) (providing that a lease does not terminate automatically for failure to pay rent unless it contains an express term requiring the tenant to pay rent in advance and the tenant fails to pay); I.C. § 32-31-1-6 (providing that a landlord must give the tenant at least ten days' notice before he can terminate the lease for failure to pay rent).[5] Therefore, her contractual interest in the property still existed on the day she allegedly trespassed on that property.

[9] Because it is undisputed that Apollos and Francois both understood that they had agreed that Apollos would live in Francois' residence in exchange for money and/or childcare services, we find that the evidence does not establish

---

[4] Even the prosecutor understood that the parties had a "renter agreement." Tr. p. 100.

[5] In its brief, the State acknowledges that there was a "tenancy at sufferance," appellee's br. p. 14, meaning that the lease did not terminate automatically even if Apollos had breached it. I.C. § 32-31-1-6.

beyond a reasonable doubt that Apollos did not have a contractual interest in the property. In other words, we find that the State failed to disprove contractual interests reasonably apparent from the circumstances under which the trespass allegedly occurred. Consequently, we reverse the criminal trespass conviction for insufficient evidence.

[10] The judgment of the trial court is reversed and remanded with instructions to vacate the criminal trespass conviction and adjust Apollos's sentence accordingly.

Vaidik, C.J., and Najam, J., concur.