## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 01 2018, 5:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brendan K. Lahey
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Chandra K. Hein
Michael G. Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Reginald Blackburn,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | August 1, 2018<br><br>Court of Appeals Case No.<br>71A03-1709-CR-2056<br><br>Appeal from the St. Joseph<br>Superior Court<br><br>The Honorable Julie Verheye,<br>Magistrate<br><br>Trial Court Cause No.<br>71D04-1705-CM-2067 |

**Barnes, Senior Judge.**

# Case Summary

Reginald Blackburn appeals his conviction and sentence for Class A misdemeanor domestic battery. We affirm.

# Issues

The issues before us are as follows:

  I. whether the trial court erred in admitting evidence over Blackburn's hearsay objections; and

  II. whether sufficient evidence supports Blackburn's conviction.

# Facts

During the relevant period, Blackburn and C.W. were in a romantic relationship and lived together in Mishawaka. On April 29, 2017, C.W.'s sister called the Mishawaka Police Department to request a welfare check on C.W. Officer Andrew Silveus was the first officer at the scene, and he observed Blackburn and C.W. arguing. Officer Glenn Roach arrived at the scene. He spoke with C.W. in the couple's apartment and observed a small lump behind her ear. C.W. told Officer Roach that she was five months pregnant and that Blackburn had beaten and choked her. Officer Paul Robinson observed and photographed C.W.'s injuries.[1]

---

[1] Due to a technical issue, Officer Robinson's photographs were unusable.

[4]     On May 4, 2017, the State charged Blackburn with Class A misdemeanor domestic battery. On August 10, 2017, he was tried to the bench. At trial, C.W. testified that she was "exaggerat[ing]" when she told the officers, medical responders, and an emergency room nurse that Blackburn had beaten and choked her. Tr. Vol. I p. 5. She attributed a bruise or mark on her arm to "wrestling over the phone or whatever" with Blackburn. *Id*. at 7.

[5]     During the State's case-in-chief, Officer Roach testified, over defense counsel's hearsay objection, that "[C.W.] said she got choked [by Blackburn] and that her stomach hurt and that she was pregnant." *Id*. at 30. The trial court overruled Blackburn's hearsay objection pursuant to Indiana Evidence Rule 801(D)(1)(C).

[6]     Next, Officer Robinson testified that he observed and photographed "a slight bump behind [C.W.'s] left ear toward the top of it," but that the pictures "were blurry or didn't turn out." *Id*. at 33.

[7]     Emergency room nurse Nicole Hostetler testified that C.W. "was brought by ambulance to [St. Joe Medical Center]" for medical treatment. *Id*. at 40. When Nurse Hostetler met with C.W., Nurse Hostetler identified herself as a registered nurse, asked questions of a medical nature, was wearing a "blue scrub top and scrub pants," and performed CAT scan and ultrasound imaging. *Id*.

[8]     During the State's case-in-chief, the prosecutor asked Nurse Hostetler what C.W. had told her about the incident. Defense counsel objected on hearsay grounds, challenging whether Nurse Hostetler's testimony fit within the Indiana

Evidence Rule 803(4) hearsay exception—as the State argued—and arguing that Nurse Hostetler's questioning of C.W. had been conducted for police investigative purposes. After the trial court overruled the objection, Nurse Hostetler testified as follows:

> [C.W. said] [t]hat her and her baby's daddy had been fighting. She thought – he had thought she was cheating on him and pretended to be someone else or a guy on Facebook and instant messaged her and they had been fighting all week. He kicked in her door and took her car and her keys – her car and her phone, excuse me. And she didn't – she had said that she didn't think that he was ever going to stop hitting her and he choked her to where she thought she was being choked for approximately three minutes.

*Id.* at 42. A physical examination of C.W. revealed "abrasions to her left arm, the back of her neck on the right side," "an abrasion, bump behind her left ear," and "hair that looked like it had been pulled." *Id.* at 43. C.W.'s statements to Nurse Hostetler prompted a CAT scan for permanent damage to the choroidal arteries and an ultrasound to confirm and assess the pregnancy.

[9] At the close of the evidence, the trial court found Blackburn guilty as charged and made the following sentencing remarks:

> THE COURT: . . . I am going to find Mr. Blackburn guilty. I do believe that the testimony that was offered through [C.W.] today represents somewhat of a backtracking, actually quite a bit of backtracking from what she originally told the police and the other medical personnel on this particular evening.

We do have, you know, the testimony from those witnesses regarding the visibly [sic] physical injuries that they observed. She told the nurse that she was choked, and the nurse observed abrasions on her arm, back of her neck, bump above her ear which the officer . . . testified . . . that he attempted to photograph as well. And based upon the information that she gave to the nurse, that's why the CT scan was done, that's why the ultrasound was done.

And even if I take her at what she said as being the description of what happened, certainly I think, you know, she had a cell phone in her hand, [Blackburn] was trying to take it away from her. She obviously didn't want her cell phone taken away from her. So regardless of which set of circumstances, and I believe it's quite frankly what she told the police and the emergency responders on April 29th is that she was touched, she was touched in a rude, insolent or angry manner, and Mr. Blackburn was a family or household member based upon [C.W.]'s testimony as well that they lived together at this apartment.

*Id*. at 52-53. The trial court then sentenced Blackburn to ninety days in jail, all suspended to probation, ordered his participation in a batterers' intervention program, and entered a domestic violence determination against him. Blackburn now appeals.

# Analysis

## I.  *Admissibility of Evidence*

[10]  Blackburn argues that the trial court erred in allowing "multiple [instances] of inadmissible hearsay" evidence over his objections. Appellant's Br. p. 15. A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *Lehman v. State,* 926 N.E.2d 35, 37 (Ind. Ct. App. 2010), *trans. denied*

(citing *Iqbal v. State,* 805 N.E.2d 401, 406 (Ind. Ct. App. 2004)). An abuse of discretion occurs if the trial court's decision is "clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law." *Boatner v. State,* 934 N.E.2d 184, 186 (Ind. Ct. App. 2010).

[11] Hearsay is an out-of-court statement offered in court to prove the truth of the matter asserted. *Jones v. State,* 800 N.E.2d 624, 627-28 (Ind. Ct. App. 2003) (citing Ind. Evidence Rule 801(c)). As a general rule, hearsay evidence is inadmissible. *Id.* (citing Evid. R. 802). Hearsay is not admissible in evidence unless a recognized exception applies. Evid. R. 802. These exceptions are enumerated by Indiana Rule of Evidence 803. Statements not admitted to prove the truth of the matter do not run afoul of the hearsay rule—they are not hearsay. Evid. R. 802.

### 1. Prior Identification Made Shortly After Perceiving

[12] Blackburn argues that the trial court abused its discretion in admitting C.W.'s statement to Officer Roach identifying him as the person who caused her injuries. The statement was made as follows on direct examination of Office Roach:

> Q     * * * * * And did [C.W.] say who caused her injuries?
>
> [Defense counsel]:         Objection, Your Honor. Hearsay.

[Prosecutor]: Your Honor, it's not hearsay under 801 (D)(1)(C), a prior identification of a person made shortly after perceiving. The declarant testified at trial and was subject to cross-examination.

THE COURT: Objection is overruled.

Q Did she state who caused her injuries?

A Mr. Blackburn.

Tr. p. 30.

[13] Evidence Rule 801(d)(1)(C) provides that "a statement is not hearsay if the declarant testifies in court, is subject to cross-examination about a prior statement, and the statement 'is an identification of a person shortly after perceiving the person.'" *See Kendall v. State,* 790 N.E.2d 122, 127-28 (Ind. Ct. App. 2003) (witness's prior statement to police identifying defendant as driver of car used in crime was admissible as substantive evidence under Evidence Rule 801(d)(1)(C) where witness recanted her prior identification statement at trial identifying defendant); *see also Robinson v. State,* 682 N.E.2d 806, 810 (Ind. Ct. App. 1997) (no error in allowing police detective to testify regarding witness's identification of defendant where witness testified at trial and recanted his prior identification statement and claimed that his prior statement to police was a fabrication).

[14] Here, the record reveals that, on arriving at the scene, Officer Roach interviewed C.W., who identified Blackburn as the person who battered her.

Because C.W. made the statement after Officer Roach arrived and before she was transported to the hospital, we find that the statement was an identification made shortly after C.W. perceived Blackburn. Because C.W. testified at trial—albeit to recant—and was available for cross-examination by defense counsel, the court did not abuse its discretion in admitting into evidence her prior identification of Blackburn as her batterer.

### 2. Statement for Medical Diagnosis or Treatment

[15] Next, Blackburn contends the trial court erred in admitting, over his hearsay objection, Nurse Hostetler's testimony regarding the events that brought C.W. to the emergency room. Tr. Vol. I p. 42 ("[C.W. said] she didn't think that [Blackburn] was ever going to stop hitting her and he choked her to where she thought she was being choked for approximately three minutes."). Defense counsel argued that C.W. believed that Nurse Hostetler was a law enforcement officer, and that Nurse Hostetler was questioning her for investigative law enforcement, rather than medical, purposes. Counsel for the State countered that C.W.'s statement fell within Indiana Evidence Rule 803(4).

[16] Indiana Evidence Rule 803(4) generally permits statements made for the purpose of medical diagnosis or treatment to be admitted into evidence, even when the declarant is available. The statements must be "made by persons who are seeking medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." *Id.*

[17] Rule 803(4)'s exception is grounded in a belief that the declarant's self-interest in obtaining proper medical treatment makes such a statement reliable enough for admission at trial; stated differently, Rule 803(4) reflects the idea that people are unlikely to lie to their doctors as doing so might jeopardize their health. *See White v. Illinois,* 502 U.S. 346, 356, 112 S. Ct. 736 (1992) ("a statement made in the course of procuring medical services, where the declarant knows that a false statement may cause misdiagnosis or mistreatment, carries special guarantees of credibility"). We employ a two-step test for purposes of admission under Rule 803(4): First, "is the declarant motivated to provide truthful information . . . to promote diagnosis and treatment," and second, "is the content of the statement such that an expert in the field would reasonably rely on it in rendering diagnosis or treatment." *McClain v. State,* 675 N.E.2d 329, 331 (Ind. 1996).

[18] Here, Nurse Hostetler testified that C.W. was transported to the St. Joe Medical Center emergency room because she was reportedly pregnant and had just been involved in a physical altercation. Applying the two-step *McClain* test, we find that C.W. was likely anxious after she was transported to the hospital and, further, that her desire to seek and receive treatment may certainly be inferred under the circumstances. Moreover, the information that C.W. provided about being struck repeatedly and choked for approximately three minutes is information that a medical expert would reasonably rely upon in diagnosing or treating a pregnant battery victim.

[19] As with C.W.'s "backtracking" at trial, it was the province of the trial court to assess the credibility of her testimony that she believed, at the time of their

meeting, that Nurse Hostetler was a police officer who was "just taking ultrasound." Tr. p. 7. The record reveals that when they met, Hostetler wore blue scrubs, identified herself to C.W. as a registered nurse, questioned C.W. regarding her physical health, performed a "head to toe" physical exam of C.W., and administered a CAT scan and an ultrasound upon being advised by C.W. that she was pregnant and that she had been choked for approximately three minutes. Based on the foregoing, we conclude that the trial court did not abuse its discretion in admitting C.W.'s statement to Nurse Hostetler.

### 3. Declarant's Then-Existing State of Mind

[20] Lastly, Blackburn argues that the trial court erred in admitting, over his hearsay objections, Officer Roach's response to the prosecutor's question, "Did [C.W.] make any statements concerning her physical condition?" *Id*. at 29. Officer Roach responded that "[C.W.] said she got choked [by Blackburn] and that her stomach hurt and that she was pregnant." *Id*. at 30. Counsel for the State argued, and the trial court agreed, that C.W.'s statement to Officer Roach fell within hearsay exception Indiana Evidence Rule 803(3).[2]

---

[2] In his brief, Blackburn contends that admission of C.W.'s hearsay statement to Officer Roach violated his Sixth Amendment right to confront the witness against him. In *Crawford v. Washington,* 541 U.S. 36, 124 S. Ct 1354 (2004), the United States Supreme Court considered whether an out-of-court statement, which was admitted pursuant to a hearsay exception or because it met some other guarantee of trustworthiness, violated a criminal defendant's Sixth Amendment right to confront witnesses against him when the declarant is unavailable. Blackburn's reliance on *Crawford* is misplaced here because C.W. testified at trial. *Id*. at 59 n.9, 1369 n.9 (holding that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his [or her] prior testimonial statements").

[21] Our Supreme Court has recognized that a statement of a declarant's then-existing state of mind is admissible as an exception to the hearsay rule. Evid. R. 803(3); s*ee Ford v. State*, 704 N.E.2d 457, 459-60 (Ind. 1998). However, when the statement is not a direct assertion of the declarant's then-existing state of mind but circumstantial evidence of it, it is being offered not to prove the truth of the matter asserted, but for some other purpose; thus, the statement by definition is not hearsay. *See Angleton v. State*, 686 N.E.2d 803, 809 (Ind. 1997); 13, Robert Lowell Miller, Jr., INDIANA PRACTICE § 803.103A at 613-14 (noting that when a declarant's statement is offered as circumstantial evidence of the victim's state of mind, it is offered for a purpose other than to prove the truth of the matter asserted, and therefore, is not hearsay). Accordingly, in such circumstance, the evidence need not be shown to be within an exception to the hearsay rule.

[22] Here, it is difficult to imagine how Officer Roach's testimony that C.W. said that "she got choked [by Blackburn] and that her stomach hurt and that she was pregnant" could be admitted for some purpose other than the truth of the matter asserted. Although the argument may reasonably be made that the statement was offered to explain physical injuries suffered at Blackburn's hands, *see Hatcher v. State,* 735 N.E.2d 1155, 1161 (Ind. 2000), we are not persuaded here, in part, due to C.W.'s backtracking at trial. We find instead that the State offered C.W.'s statement for the truth of the matter asserted; thus, C.W.'s utterance to Officer Roach is hearsay. Although Blackburn's hearsay objection should have been sustained in this regard, the erroneous admission of this

utterance was nonetheless harmless because the State presented independent evidence that Blackburn battered C.W. through Nurse Hostetler's testimony and circumstantial evidence of C.W.'s injury/injuries as observed by three testifying witnesses. *See Fleener v. State,* 656 N.E.2d 1140 (Ind. 1995); Ind. Trial Rule 61.

## II. *Sufficiency of Evidence*

[23] Blackburn argues that the evidence was insufficient to support his conviction. Specifically, he argues that "there was testimony offered which directly contradicted several essential elements of the charge, but which was still noted by the trial court as supporting a conviction." Appellant's Br. p. 6.

> When reviewing a challenge to the sufficiency of the evidence underlying a criminal conviction, we neither reweigh the evidence nor assess the credibility of witnesses. The evidence— even if conflicting—and all reasonable inferences drawn from it are viewed in a light most favorable to the conviction. We affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt.

*Bailey v. State,* 979 N.E.2d 133, 135 (Ind. 2012) (citations and quotation omitted). "The factfinder is obliged to determine not only whom to believe, but also what portions of conflicting testimony to believe, and is not required to believe a witness'[s] testimony even when it is uncontradicted." *Wood v. State*, 999 N.E.2d 1054, 1064 (Ind. Ct. App. 2013) (citation omitted).

[24] "The State need not present direct evidence to support each element of a crime, and it has long been held that circumstantial evidence will support a conviction." *Semenick v. State*, 977 N.E.2d 7, 15 (Ind. Ct. App. 2012) (emphasis removed). Direct evidence has been defined as "[e]vidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption." BLACK'S LAW DICTIONARY (10th ed. 2014). Circumstantial evidence has been defined as "[e]vidence based on inference and not on personal knowledge or observation" or as "[a]ll evidence that is not given by eyewitness testimony." *Id*. A conviction may rest on circumstantial evidence alone. *Peters v. State*, 959 N.E.2d 347, 355 (Ind. Ct. App. 2011). Circumstantial evidence need not overcome every reasonable hypothesis of innocence; it is sufficient if an inference drawn from the circumstantial evidence reasonably tends to support the conviction. *Id*.

[25] To convict Blackburn of Class A misdemeanor domestic battery, the State was required to prove that he knowingly or intentionally touched C.W. in a rude, insolent, or angry manner resulting in bodily injury, and that C.W. was living with Blackburn as if she were his spouse. Ind. Code § 35-42-2-1.3.

[26] Here, when the police responded to the scene, Blackburn and C.W. were arguing heatedly. Officers Roach and Robinson each observed a bump behind C.W.'s ear. Attending ER Nurse Hostetler saw "abrasions to [C.W.'s] left arm, the back of her neck on the right side," the "bump behind her left ear," and "hair that looked like it had been pulled." Tr. p. 42. At trial, the court admitted, as substantive evidence, C.W.'s statement to Nurse Hostetler that

"she didn't think that [Blackburn] was ever going to stop hitting her and he choked her to where she thought she was being choked for approximately three minutes." *Id.*

Based upon C.W.'s account to Nurse Hostetler and her injuries as observed by Officers Roach and Robinson and Nurse Hostetler, a reasonable factfinder could find beyond a reasonable doubt that Blackburn knowingly or intentionally touched C.W. in a rude, insolent, or angry manner by hitting and choking her, which resulted in physical pain. Blackburn's arguments that C.W. later denied being battered, recanted her accusations, and offered an alternate explanation for her injuries amount to an invitation to reweigh conflicting evidence, which we cannot do. *See Bailey,* 979 N.E.2d at 135.

## Conclusion

The trial court did not abuse its discretion in admitting evidence. Sufficient evidence supports Blackburn's conviction. We affirm.

Affirmed.

Vaidik, C.J., and Pyle, J., concur.