## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 26 2019, 9:15 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Christopher Kunz
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Sierra A. Murray
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Artiemisha Rhodes, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | December 26, 2019 <br><br> Court of Appeals Case No. <br> 19A-CR-1508 <br><br> Appeal from the <br> Marion Superior Court <br><br> The Honorable <br> Linda E. Brown, Judge <br><br> The Honorable <br> Peggy Hart, Magistrate <br><br> Trial Court Cause Nos. <br> 49G09-1904-CM-13658 <br> 49G09-1904-CM-14819 |

**Vaidik, Chief Judge.**

# Case Summary

[1] Artiemisha Rhodes appeals her criminal-trespass convictions, arguing that the evidence is insufficient to prove that she did not have a contractual interest in her mother's house. We affirm.

# Facts and Procedural History

[2] In January 2019, thirty-seven-year-old Rhodes was released from jail. After her release, she stayed "on and off" at her mother Alma Turner's house, keeping a "few belongings there." Tr. p. 25. On April 8, Turner asked Rhodes to leave her house. Although it's unclear why Turner asked Rhodes to leave, it is apparent that there were "a lot of issues . . . about their relationship and [Turner] didn't want [Rhodes] in her house or around her property." *Id.* at 16. When Rhodes told her mother that she didn't have to leave, Turner called the police. The police responded and told Rhodes that she had to leave. Rhodes left but returned a couple hours later. Turner again called the police. When Rhodes told the police that she didn't have to leave, she was arrested for criminal trespass and taken to Eskenazi Hospital.

[3] Rhodes was released from the hospital on April 16 and returned to her mother's house to "find out . . . if [she] could stay [there]." *Id.* at 33. Turner told Rhodes to leave because she couldn't "deal with the situation anymore." *Id.* at 24. When Rhodes did not leave, the police were called to Turner's house. Turner again told Rhodes to leave and explained to the police that Rhodes did not live

there. The police told Rhodes to leave. Turner went inside her house, and the police left. When Turner later looked out her window, she saw that Rhodes had returned. Turner called the police, and Rhodes was arrested for criminal trespass.

[4] Thereafter, the State charged Rhodes with two counts of criminal trespass, one for April 8 and the other for April 16. At trial, Turner testified that Rhodes didn't have any interest in her house on either April 8 or 16, that Rhodes did not pay rent, and that she did not want Rhodes there on either occasion. *Id.* at 21, 25. Rhodes testified that she "used to pay rent" at her mother's house but that she didn't in April. *Id.* at 34. The trial court found Rhodes guilty on both counts.

[5] Rhodes now appeals.

# Discussion and Decision

[6] Rhodes contends that the evidence is insufficient to support her criminal-trespass convictions. In order to convict Rhodes of criminal trespass as charged here, the State had to prove that she (1) did not have a contractual interest in Turner's real property and (2) knowingly or intentionally entered Turner's real property having been denied entry by Turner. *See* Ind. Code § 35-43-2-2(b)(1); Appellant's App. Vol. II pp. 14, 78. Rhodes only challenges whether the State proved that she did not have a contractual interest in Turner's real property.

As defined by our Supreme Court, a "contractual interest in the property" as required by Section 35-43-2-2 means "a right, title, or legal share of real property arising out of a binding agreement between two or more parties." *Lyles v. State,* 970 N.E.2d 140, 143 n.2 (Ind. 2012). The State need not disprove every conceivable contractual interest, but it must disprove contractual interests that are reasonably apparent from the context and circumstances under which the trespass allegedly occurred. *Id.* at 143.

Here, the State proved that Rhodes did not have a contractual interest in her mother's house. At trial, Turner confirmed multiple times that Rhodes didn't have "any interest" in her house, didn't own any part of it, and didn't pay rent. Tr. p. 21. In addition, Turner testified that although Rhodes had stayed at her house "on and off" since she was released from jail in January, she was no longer welcome there. Nevertheless, Rhodes claims that she had "an unwritten living agreement" with her mother that allowed her to stay there. Appellant's Br. p. 8. Although the record shows that Turner had allowed Rhodes to stay at her house "on and off" after she was released from jail, there was no binding agreement between them. *Cf. Apollos v. State*, 59 N.E.3d 266, 268 (Ind. Ct. App. 2016) ("In this case, both Apollos and Francois understood that an agreement existed, pursuant to which Apollos would live at Francois's residence in exchange for rent and/or childcare services for Francois's daughter. The precise terms may not have been agreed upon, but both parties understood that an agreement existed."). Instead, it appears that Turner allowed Rhodes to stay

at her house by her good graces and not pursuant to any binding agreement between them.

[9] Finally, Rhodes argues that this case "strongly resembles" *Semenick v. State*, 977 N.E.2d 7 (Ind. Ct. App. 2012), *trans. denied*. Appellant's Br. p. 13. In that case, the defendant got into an argument with another worshipper at a Sunday morning church service. An off-duty police officer working security asked the defendant to leave. The defendant refused and was arrested for criminal trespass. On appeal, we reversed the defendant's conviction, explaining as follows:

> [T]here is uncontroverted testimony that [the defendant] was a church member, and an absence of evidence that [the officer] had authority to demand, without more, that a worshipper leave the sanctuary during Sunday services. Effectively, he intervened between parishioners who presumably had equal interests in the premises, and chose who would stay and who would go.

*Semenick*, 977 N.E.2d at 10. That is simply not the case here. Turner and Rhodes did not have "equal interests" in the house; rather, it is undisputed that Turner owned the house. We therefore affirm Rhodes's convictions for criminal trespass.

[10] Affirmed.

Najam, J., and Tavitas, J., concur.