## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 30 2018, 10:50 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald R. Shuler
Barkes, Kolbus, Rife & Shuler, LLP
Goshen, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Wendell Manuel,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | November 30, 2018<br><br>Court of Appeals Case No.<br>18A-CR-1425<br><br>Appeal from the<br>Elkhart Superior Court<br><br>The Honorable<br>Kristine A. Osterday, Judge<br><br>Trial Court Cause No.<br>20D01-1603-F1-2 |

**Kirsch, Judge.**

[1] Wendell Manuel ("Manuel") was convicted after a bench trial of one count of rape resulting in serious bodily injury[1] as a Level 1 felony and one count of rape[2] as a Level 3 felony, and the trial court imposed an aggregate sentence of forty-five years. Manuel appeals and raises the following issues for our review:

> I. Whether the State presented sufficient evidence to support Manuel's convictions; and

> II. Whether Manuel's sentence is inappropriate in light of the nature of the offense and the character of the offender.

[2] We affirm.

## Facts and Procedural History

[3] During the evening of August 6, 2015, C.E. was on the porch outside of her apartment with her brother and a co-worker when Manuel approached them. When he approached the porch, Manuel was holding a bottle of Amsterdam Peach Vodka in his hand. Although C.E. had seen Manuel before and knew he went by the nickname "Rock," she did not know him well. *Tr. Vol. 2* at 208-09. Manuel approached C.E.'s brother, who shook Manuel's hand, and the two began talking. Later in the evening, C.E. went inside her apartment to use the restroom, leaving her brother, her co-worker, and Manuel outside on the porch. She locked the screen door behind her and went upstairs to the restroom.

---

[1] *See* Ind. Code § 35-42-4-1(a),(b)(3).

[2] *See* Ind. Code § 35-42-4-1(a).

When she came back down the stairs, Manuel was standing in her living room, and both the front door and sliding door were locked.

[4] C.E. asked Manuel what he was doing in her house and told him to leave. *Id.* at 214. Manuel responded, "Fuck that," he wanted some "pussy." *Id.* at 215. C.E. told Manuel to "get the fuck out of [her] house." *Id.* Manuel then grabbed C.E. by the hair and backhanded her across the mouth with his right hand, causing C.E. to lose consciousness. *Id.* at 216. When C.E. regained consciousness, she was lying on her back on the living room floor. C.E. was naked from her waist down, and she felt pain as if she had vaginal intercourse. *Id.* at 217, 222. Manuel was standing over her with his pants pulled down and his erect penis exposed. *Id.* at 217, 223. C.E. then heard Manuel say "[f]uck that, I want some head," which she interpreted to mean that he wanted oral sex. *Id.* at 223. C.E. approached Manuel on her knees and put his penis in her mouth because she was intimidated by Manuel since he already struck her once. *Id.* at 224. C.E.'s mouth was bleeding from being hit in the face, so she stopped and told Manuel that she needed to rinse the blood out of her mouth. *Id.* Manuel told C.E. to "hurry up." *Id.* C.E. then walked toward the kitchen, unlocked the door, and ran to a neighbor's apartment.

[5] When she reached her neighbor's apartment, C.E. was hysterical and repeated, "[h]e was in my apartment." *Id.* at 226. C.E. then told her neighbor that C.E.'s two-year-old daughter was still sleeping upstairs in her apartment, but she was scared to go back. *Id.* at 226-27. The neighbor went to C.E.'s apartment and determined that Manuel had left. C.E. returned to her apartment and called her

cousin. Her cousin came over and convinced her to report the incident to the police. *Id*. at 228.

[6] When the responding officer arrived at C.E.'s apartment just after 5:00 a.m., he found C.E. in her upstairs bedroom. The officer observed that C.E. seemed overwhelmed and in a state of shock and that "she was just kind of laying [sic] there motionless" and did not want to answer questions. *Id*. at 109, 111-12. The officer noticed that C.E. had swelling to the right side of her face and that the right side of her lips were "very swollen"; she also had an abrasion on her left knee. *Id*. at 112, 128-29; *State's Exs*. 28-30. The officer observed that C.E.'s apartment was generally "picked up and organized," but there were signs of a disturbance in the living room where C.E. reported the rapes occurred. *Tr. Vol. 2* at 119-20; *State's Exs*. 4-27. A glass of liquid had been spilled, which left a fresh stain on the carpet, and a t-shirt, a pair of socks, and a box cutter were lying on the floor. *Tr. Vol. 2* at 121-23; *State's Exs*. 4-10. A bottle of Amsterdam Peach Vodka was sitting on C.E.'s kitchen table. *Tr. Vol. 2* at 133-34; *State's Ex*. 12. C.E. later testified that the bottle of peach vodka was already on the table when she came down the stairs, the glass was spilled during the incident, the t-shirt found in the living room was the one Manuel had been wearing that evening, and the socks and box cutter on the living room floor did not belong to her. *Tr. Vol. 2* at 231-32, 241, 243.

[7] In the morning on August 7, 2015, about eight hours after she was assaulted, C.E. was taken to the hospital for an examination by a sexual assault nurse examiner. The sexual assault kit, which included vaginal and cervical swabs

and a piece of toilet tissue used by C.E. after urination at the hospital, was sent to the Indiana State Police Laboratory for testing along with a buccal swab from Manuel for comparison. *Id*. at 141-42, 190. A forensic scientist performed serological testing on the items in the sexual assault kit. The presumptive test for seminal material was positive on the vaginal and cervical swabs, but the scientist was unable to confirm the presence of seminal material or develop a full DNA profile from any of the items. *Id*. at 192-94; *State's Ex*. 200.

[8] The sexual assault kit was then submitted to another forensic scientist for Y-STR analysis, involving DNA from the Y chromosome only, which is found only in males and is passed on directly from a father to a son. *Tr. Vol. 2* at 198. This type of DNA analysis is useful in situations where there is an overwhelming amount of female DNA present and the item of interest is the smaller amount of male DNA present. *Id*. at 198. The analyst was able to obtain a partial Y-STR profile from a cutting of the toilet tissue, which she found to be consistent with the Y-STR profile obtained from Manuel. *State's Ex*. 300. The scientist determined that "Manuel and all his male paternal relatives cannot be excluded as potential Y-STR contributors to the sample." *Id*.

[9] Manuel was interviewed by the police and admitted that he was inside C.E.'s apartment that evening but claimed that he performed consensual oral sex on C.E. on her kitchen counter. *Tr. Vol. 2* at 166; *State's Ex*. 400. The police had Manuel demonstrate his positioning during the sexual encounter, and he

demonstrated a kneeling position, looking up when he performed the act. *Tr. Vol. 2* at 168; *State's Ex.* 33. The police measured his height in that position and compared the measurements with the height of C.E.'s kitchen countertops and found that Manuel's account was not physically possible. *Tr. Vol. 2* 167-70, 172-173; *State's Exs.* 32-33, 38-42.

[10] On March 2, 2016, the State charged Manuel with two counts of Level 1 felony rape resulting in bodily injury and one count of Level 3 felony criminal confinement resulting in bodily injury. A bench trial was held on February 27, 2018, and at the conclusion, the trial court took the matter under advisement. On March 28, 2018, the trial court issued an order finding Manuel guilty of one count of Level 1 felony rape resulting in bodily injury and one count of Level 3 felony rape as a lesser included offense. The trial court found Manuel not guilty of Level 3 felony criminal confinement resulting in bodily injury.

[11] A sentencing hearing was held on May 31, 2018. The trial court found the following aggravating circumstances: Manuel's extensive criminal history; his violations of the conditions of probation and community correction; that he committed the instant offenses while on parole; and "that other forms of sanctions have proved to be unsuccessful in keeping [him] from engaging in criminal activity and that [he] has not taken advantage of the programming or alternative sanctions offered to him in the past." *Tr. Vol. 3* at 62-63. The trial court also noted that Manuel was laughing during the victim's testimony at trial, which it considered "not only inappropriate but . . . offensive." *Id.* at 61. The trial court found as mitigating the fact that imprisonment will result in

undue hardship to Manuel's dependent child. *Id*. at 63. The trial court sentenced Manuel to thirty-five years for Level 1 felony rape and ten years for Level 3 felony rape, to be served consecutively, for an aggregate sentence of forty-five years in the Indiana Department of Correction. Manuel now appeals.

## Discussion and Decision

## I. Sufficient Evidence

[12] When we review the sufficiency of evidence to support a conviction, we do not reweigh the evidence or assess the credibility of the witnesses. *Boggs v. State,* 928 N.E.2d 855, 864 (Ind. Ct. App. 2010), *trans. denied.* We consider only the evidence most favorable to the verdict and the reasonable inferences that can be drawn from this evidence. *Fuentes v. State,* 10 N.E.3d 68, 75 (Ind. Ct. App. 2014), *trans. denied.* We also consider conflicting evidence in the light most favorable to the trial court's ruling. *Oster v. State,* 992 N.E.2d 871, 875 (Ind. Ct. App. 2013), *trans. denied.* We will not disturb the verdict if there is substantial evidence of probative value to support it. *Fuentes,* 10 N.E.3d at 75. We will affirm unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Delagrange v. State*, 5 N.E.3d 354, 356 (Ind. 2014). A conviction can be sustained on only the uncorroborated testimony of a single witness, even when that witness is the victim. *Dalton v. State*, 56 N.E.3d 644, 648 (Ind. Ct. App. 2016), *trans. denied*.

[13] In order to convict Manuel of rape as a Level 3 felony, the State was required to prove beyond a reasonable doubt that he knowingly or intentionally had sexual

intercourse with another person or knowingly or intentionally caused another person to perform or submit to other sexual conduct when the other person was compelled by force or imminent threat of force. Ind. Code § 35-42-4-1(a)(1). The offense is elevated to a Level 1 felony if it results in serious bodily injury to a person other than the defendant. Ind. Code § 35-42-4-1(b)(3). Other sexual conduct is defined as an act involving: (1) a sex organ of one person and the mouth or anus of another person; or (2) the penetration of the sex organ or anus of a person by an object. Ind. Code § 35-31.5-2-221.5. Serious bodily injury is defined as "bodily injury that creates a substantial risk of death or that causes: (1) serious permanent disfigurement; (2) unconsciousness; (3) extreme pain; (4) permanent or protracted loss or impairment of the function of a bodily member or organ; or (5) loss of a fetus." Ind. Code § 35-31.5-2-292.

[14] Manuel argues that that the evidence presented by the State was insufficient to support his convictions. Specifically, he does not challenge the sufficiency of the evidence of any particular element of his rape convictions. Instead, Manuel contends that the evidence is insufficient to sustain his convictions because C.E.'s testimony was incredibly dubious.

[15] In general, the uncorroborated testimony of one victim is sufficient to sustain a conviction. *Holeton v. State*, 853 N.E.2d 539, 540 (Ind. Ct. App. 2006). However, the "incredible dubiosity rule" provides that "a court may 'impinge on the jury's responsibility to judge the credibility of witnesses only when confronted with inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity.'" *Govan v. State*, 913 N.E.2d

237, 243 n.6 (Ind. Ct. App. 2009) (quoting *Murray v. State*, 761 N.E.2d 406, 408 (Ind. 2002)), *trans. denied*. The application of this rule is rare and is limited to situations in which a sole witness presents inherently improbable testimony such that no reasonable person could believe it, and there is a complete lack of circumstantial evidence of a defendant's guilt. *Id*. The standard to be applied is "'whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it.'" *Morell v. State*, 933 N.E.2d 484, 492 (Ind. Ct. App. 2010) (quoting *Fajardo v. State*, 859 N.E.2d 1201, 1208 (Ind. 2007)). While the incredible dubiosity standard is not impossible to meet, it requires great ambiguity and inconsistency in the evidence. *Moore v. State*, 27 N.E.3d 749, 756 (Ind. 2015).

[16] Here, C.E. gave testimony at trial that Manuel entered her home, refused to leave, and stated he wanted some "pussy." *Tr. Vol. 2* at 215. When C.E. refused him and again told him to leave, he grabbed her by the hair and backhanded her across the right side of her mouth, which caused her to lose consciousness. *Id*. at 216. When C.E. regained consciousness, she was lying on her back on the living room floor, naked from her waist down, and felt pain as if she had vaginal intercourse, and Manuel was standing over her with his pants down and his erect penis exposed. *Id*. at 217, 222, 223. Manuel then demanded that he wanted oral sex from C.E. and compelled her to do so. *Id*. at 223, 224. C.E.'s testimony was not so "incredibly dubious or inherently improbable that no reasonable person could believe it." *See Morell*, 933 N.E.2d at 492.

[17] Manuel points to inconsistencies between statements that C.E. made to the police prior to trial and her testimony at trial, asserting that these inconsistencies make C.E.'s testimony incredibly dubious. However, "[i]t is well-settled that 'discrepancies between a witness's trial testimony and earlier statements made to police and in depositions do not render such testimony 'incredibly dubious.'" *Wolf v. State*, 76 N.E.3d 911, 916 (Ind. Ct. App. 2017) (quoting *Holeton*, 853 N.E.2d at 541-42). Manuel also contends that the physical evidence presented at trial did not corroborate C.E.'s testimony. We disagree. There must be a complete lack of circumstantial evidence for testimony to be considered incredibly dubious. *Id.*

[18] At trial, photographic evidence was presented that showed the injuries C.E. suffered to her lips and mouth and the abrasion to her left knee. This evidence corroborated C.E.'s testimony that Manuel backhanded her across the right side of her mouth and compelled her to perform oral sex on him while kneeling on the living room rug. Additionally, the Y-STR DNA profile taken from the toilet tissue that C.E. used after urinating was found to be consistent with the Y-STR profile obtained from Manuel and provided circumstantial evidence of his guilt. Further, photographs were presented of C.E.'s apartment, which showed that, although the apartment was generally orderly, the area of the living room where C.E. stated that the rape took place showed signs of a struggle, including a glass of liquid that had been spilled and several items that did not belong to C.E., including a t-shirt, socks, and a box cutter. This photographic evidence further corroborated C.E.'s testimony. Therefore, C.E.'s testimony was not

inherently improbable or equivocal, and there was circumstantial evidence that was consistent with her description of what occurred, and Manuel has not shown that the incredible dubiosity rule should apply. Manuel's sufficiency arguments are merely requests for this court to reweigh the evidence, which we cannot do. *Boggs,* 928 N.E.2d at 864. We, thus, conclude that sufficient evidence was presented to support Manuel's convictions.

## II.    Inappropriate Sentence

[19]    Pursuant to Indiana Appellate Rule 7(B), this court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the [c]ourt finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Our Supreme Court has explained that the principal role of appellate review should be to attempt to leaven the outliers, "not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). We independently examine the nature of Manuel's offense and his character under Appellate Rule 7(B) with substantial deference to the trial court's sentence. *Satterfield v. State*, 33 N.E.3d 344, 355 (Ind. 2015). "In conducting our review, we do not look to see whether the defendant's sentence is appropriate or if another sentence might be more appropriate; rather, the test is whether the sentence is 'inappropriate.'" *Barker v. State*, 994 N.E.2d 306, 315 (Ind. Ct. App. 2013), *trans. denied*. Whether a sentence is inappropriate ultimately depends upon "the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case." *Cardwell*, 895 N.E.2d at

1224. Manuel bears the burden of persuading us that his sentence is inappropriate. *Id*.

[20] Manuel argues that his forty-five-year aggregate sentence is inappropriate under Appellate Rule 7(B). Specifically, as to the nature of the offense, he claims that there was "nothing particularly outrageous that is above and beyond what is necessary to establish" Level 1 felony rape and Level 3 felony rape and, therefore, nothing "beyond what the Legislature has determined is the appropriate advisory sentence" for his offenses. *Appellant's Br.* at 20. As to his character, Manuel asserts that, although he has a criminal history, the record also established that, when not incarcerated, he consistently maintained employment, that he has positive relationships with his family, and that he had previously completed substance abuse classes and had not used illegal substances in eight years. Manuel, therefore, urges this court to find his sentence inappropriate.

[21] When determining whether a sentence is inappropriate, the advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Kunberger v. State*, 46 N.E.3d 966, 973 (Ind. Ct. App. 2015); *Thompson v. State*, 5 N.E.3d 383, 391 (Ind. Ct. App. 2014). Manuel was convicted of a Level 1 felony, and the advisory sentence for a Level 1 felony conviction is thirty years, with a range of between twenty and forty years. Ind. Code § 35-50-2-4(b). Manuel was also convicted of a Level 3 felony, for which the advisory sentence is nine years with a range of between three years and sixteen years. Ind. Code § 35-50-2-5(b). Manuel received a sentence of thirty-

five years for Level 1 felony rape and ten years for Level 3 felony rape, to be served consecutively, for an aggregate sentence of forty-five years.

[22] As this court has recognized, the nature of the offense is found in the details and circumstances of the commission of the offense and the defendant's participation. *Perry v. State*, 78 N.E.3d 1, 13 (Ind. Ct. App. 2017). Here, the nature of the offense is that Manuel entered C.E.'s apartment without her invitation, locked the door, backhanded her across the face rendering her unconscious, and raped her while C.E.'s two-year-old daughter was asleep upstairs. *Tr. Vol. 2* at 213, 216-17, 222. When C.E. regained consciousness, Manuel demanded oral sex and then forced her to put his penis in her mouth, even though her mouth was bleeding from being stuck earlier by Manuel. *Id*. at 223-24. Manuel's sexual assault of C.E. only concluded because she was able to flee the apartment after telling Manuel she needed to rinse the blood out of her mouth. *Id*. at 224-25. We do not find that Manuel's sentence is inappropriate regarding the nature of his offense, which involved two sexual assaults after Manuel hit C.E. so hard that she lost consciousness and while a child was sleeping upstairs.

[23] The character of the offender is found in what we learn of the offender's life and conduct. *Perry*, 78 N.E.3d at 13. When considering the character of the offender, one relevant fact is the defendant's criminal history. *Johnson v. State*, 986 N.E.2d 852, 857 (Ind. Ct. App. 2013). The evidence presented at the sentencing hearing showed that Manuel has an extensive criminal history spanning both Indiana and Illinois. He has six prior felony convictions and

eleven prior misdemeanor convictions, dating back to 1997, many of which involved battery. *Appellant's Conf. App. Vol. 2* at 118-23. Through his prior convictions, Manuel has been ordered to serve community service, to be placed on probation and in community corrections, and to serve time incarcerated. However, despite such opportunities, Manuel has continued to commit criminal offenses and has not shown he is willing to rehabilitate his criminal behavior. He was on parole when he committed the present offenses, and the record reflects that he had four pending criminal cases at the time of sentencing. *Id*. at 123. Additionally, Manuel had violated his probation and community corrections at least eight times in the past. *Id*. at 118-23. The trial court also noted that, as C.E. testified during trial, Manuel was laughing, which the trial court found "not only inappropriate, but . . . offensive." *Tr. Vol. 3* at 61. We conclude that, in looking at Manuel's character, his sentence is not inappropriate.

[24] Manuel asserts that his sentence is inappropriate due to his ability to maintain employment when he is not incarcerated, the fact he has positive relationships with his family, and his report of no use of illegal substance for the last eight years. While we agree that these things are commendable, we do not agree that in light of the nature of the offenses committed in the present case and in light of his character demonstrating a lack of respect for the law that his sentence is inappropriate.

[25] Affirmed.

Vaidik, C.J., and Riley, J., concur.